UNITED STATES v. CARDINALE WARE-
HOUSING CORPORATION et al.

Civ. A. No. 7179.

District Court, D. New Jersey.

May 24, 1946.

Edgar H. Rossbach, U. S. Atty., of Newark, N. J., for government.

John J. Fallon, of Hoboken, N. J., for defendants.

MEANEY, District Judge.

This matter comes before the Court on a motion for summary judgment on a complaint and amended answer filed in this suit. The United States of America instituted an action in replevin to recover possession of goods, the property of the United States, stored by the government in the warehouse of the defendant, Cardinale Warehousing Corporation, and on which goods the defendant claims a lien, based on the New Jersey Warehouseman's Lien Act.

Briefly set forth, the facts of the case are that the Procurement Division of the United States Treasury Department stored certain merchandise in the warehouse of the defendants pursuant to a contract in writing entered into on January 9, 1943 and amendments subsequent thereto. For each deposit of goods in storage a receipt was given, on the reverse side of which was a special notice which set forth, among others, the following statement: "It is understood and agreed that the Corporation claims the regular Warehouseman's Lien on these goods for any and all charges accrued hereon."

Title 57:1–30 of the New Jersey Statutes Annotated,

Uniform Warehouse Receipts Law reads as follows:

"Warehouseman's lien for charges and expenses.

"Subject to the provisions of section 57:1–33 of this title, a warehouseman shall have a lien on goods deposited or on proceeds thereof in his hands, for all lawful charges for storage and preservation of the goods; also for all lawful claims for money advanced, interest, insurance, transportation, labor, weighing, coopering and other charges and expenses in relation to such goods; also for all reasonable charges and expenses for notice and advertisements of sale, and for sale of the goods where default has been made in satisfying the warehouseman's lien."

Sections 31, 33 and 34 further provide:

57:1–31 "Property against which lien may be enforced.

"Subject to the provisions of section 57:1–33 of this title, a warehouseman's lien may be enforced:

"a. Against all goods, whenever deposited, belonging to the person who is liable as debtor for the claims in regard to which the lien is asserted; and

"b. Against all goods belonging to others which have been deposited at any time by the person who is liable as debtor for the claims in regard to which the lien is asserted, if such person had been so intrusted with the possession of the goods that a pledge of the same by him at the time of the deposit to one who took the goods in good faith for value would have been valid."

57:1–33 "Negotiable receipt to state charges; lien therefor.

"If a negotiable receipt is issued for goods, the warehouseman shall have no lien thereon, except for charges for storage of those goods subsequent to the date of

the receipt, unless the receipt expressly enumerates other charges for which a lien is claimed. In such case there shall be a lien for the charges enumerated so far as they are within the terms of section 57:1–30 of this title, although the amount of the charges so enumerated is not stated in the receipt.

57:1–34 "Lien: satisfaction before delivery.

"A warehouseman having a lien valid against the person demanding the goods may refuse to deliver the goods to him until the lien is satisfied."

It is the contention of the defendant, Cardinale Warehousing Corporation, that by virtue of the contract for storage and the provisions of the New Jersey Statutes, it has a lien on the goods deposited in conformity with the terms of the contract. Defendant asserts that in the exercise of that lien it has a right to keep possession of the said goods until it has received satisfaction of its claims arising out of the contract, and that it may make use of such further protection of its right to payment as is provided for in the Warehouseman's Lien Act.

The government, in opposition, contends that as against its property no such lien may operate, and that it has a right to possession paramount to any other claim thereto, by virtue of its sovereignty.

It is a well-recognized principle of law that the United States cannot be sued without its express, or rather its legally expressed consent. This immunity derives from its sovereignty and is a necessary attribute thereof. The question, however, in the present case is not concerned with the institution of suit against the government, but rather with an interference with the exercise of the right of the government to possession of its goods.

Can a state government create a right for an individual citizen of that state paramount to the right of the Federal Government as to the same subject matter?

■ The very positing of the question seems to suggest the indubitable response.

Granted that the United States may exercise a right, that right may not, in the absence of specific warrant by Congress, be restricted, crimped, cabined or confined by any other authority. To hold otherwise would be to contend that any one of the United States possesses the power to limit the proper functions of the Federal Government.

In the instant case one .of the provisions set forth in the contract represents that the contract covers: " *  . *  *  warehousing services for the warehousing of materials purchased pursuant to the provisions of the Act of March 11, 1941, Public No. 11 and the Act of March 27, 1941, Public No. 23, to promote the defense of the United States and for other purposes [22 U.S.C.A. § 411 et seq.]."

It would be intolerable to imagine that the United States would not have the right at all times and under all circumstances to the possession of such materials "purchased * * * to promote the defense of the United States".

■ Moreover, the purpose of the Warehouseman's Lien Act is to insure payment to the warehouseman of his claim for warehousing. It is a method of assuring payment for services. To envisage the necessity for the applicability of such a lien to the sovereign government, and to imagine that the Legislature of New Jersey considered the Federal Government to be within the purview of the Act would be to reduce the whole monetary, financial and credit system of the land, based as it is on the stability and responsibility of the government, to an absurdly contradictory mess. If the credit of the government is not acceptable for satisfaction of its obligations and its just debts, we all of us are in an anarchic condition of catastrophic insolvency.

■ This court is definitely of the opinion that no lien may be exerted against the government without its consent, any more than may the government be sued without its consent, for reasons at least as potent, if not more so, for such immunity.

There will be judgment for the plaintiff. Let an order be submitted.