**THOMSON MACHINE WORKS CO.,**
a corporation, Plaintiff,

v.

**LAKE TAHOE MARINE SUPPLY CO.,**
Inc., a corporation, John Doe, Richard Roe, Doe Corporation and The United States of America, Defendants.

No. 33911.

United States District Court
N. D. California, S. D.

Nov. 23, 1955.

Hilary H. Crawford, Hilary H. Crawford, Jr., San Francisco, Cal., for plaintiff.

Lloyd H. Burke, U. S. Atty., James B. Schnake, Asst. U. S. Atty., San Francisco, Cal., for defendants.

ROCHE, Chief Judge.

This action is brought against the United States under the provisions of 28 U.S.C. § 2410, as a complaint to quiet title against lien and to foreclose lien. The facts of this case are as follows:

On December 10, 1952, the United States entered into a contract with Lake Tahoe Marine & Supply Co., Inc., (hereinafter referred to as "Tahoe") for the construction of several utility boats. During the course of the work and in accordance with the terms of the contract, the government made progress payments to Tahoe totaling $197,128.88, less deliveries of $177,316.62, leaving a net balance due of $19,812.25.

On April 25, 1953 Tahoe ordered certain bronze rods for propeller shafts for the aforementioned boats, which shafts were delivered to Tahoe, Care of Thomson Machine Works (hereinafter referred to as "Thomson"), in San Francisco. The delivery date was July 20, 1953 at which time title to the shafts passed from the supplier to Tahoe. From the time of delivery to June 14, 1954, Thomson performed work on the 21 shafts which are subject of this action, which work was of the reasonable value of $1,313.60.

On June 10, 1954 the government terminated the contract under the default clause contained therein, by reason of the contractor's failure to perform, and exercised its right under the contract to direct the contractor to transfer to it the title to completed supplies and manufacturing materials acquired for performance of the terminated part of the contract.

Accordingly Tahoe transferred title to the propeller shafts to the government on June 23, 1954. On July 1, 1954 the government demanded possession of the propeller shafts from Thomson, in whose possession the shafts had been since July 20, 1953. On July 8, 1954 Thomson commenced this present action. On July 22, 1954, the government took the propeller shafts from the possession of Thomson without its consent.

On July 23, 1954 a creditors' petition in bankruptcy against Tahoe was filed in the U. S. District Court for the Northern District of California and thereafter Tahoe was adjudged a bankrupt. On March 30, 1955 the government filed a proof of claim in the amount of $75,933.-36 for excess costs from the default termination, asserting its priority under 31 U.S.C.A. § 191 and § 65, sub. a of the Bankruptcy Act, 11 U.S.C.A. § 105, sub. a.

The government claims superior rights to Thomson in the propeller shafts as owner and/or lienor and alleges:

(1) that the government has title to the property which must prevail over any lien claim on the part of Thomson; and

(2) that the government has a lien on the property which is paramount to the mechanic's lien acquired by Thomson under California law.

## I. Title

Clause 11 of the general provisions of the contract between Tahoe and the government provides for termination by the government; and paragraph (d) of that clause states that:

"If the contract is terminated as provided in this clause, the government, in addition to any other right prevailing in this clause, may require the Contractor to transfer title and deliver to the government in the manner directed by the contracting officer (i) any completed

supplies, and (ii) such manufacturing materials as the contractor has specifically produced or specifically acquired for the performance of such part of this contract as has been terminated."

No cases have been found which adjudicate the effect of a transfer of title made pursuant to the standard termination clause in government contracts, and as stated in the case of In re American Boiler Works, 3 Cir., 1955, 220 F.2d 319, it is clear that cases decided under contract language which vests title to the government as and when material is paid for do not help us here. The contract clearly does not contain such a provision. However, Clause 11 is clear in that the government in addition to any other right could require the contractor to transfer title and deliver to the government (i) any completed supplies and (ii) such manufacturing materials as the contractor has specifically produced or specifically acquired for performance of the contract. There is no question but that title to the propeller shafts was always in Tahoe. When Tahoe transferred title to the government, title as to the vessel and to materials vested in the government. Regardless of whether the reason back of the provision is beneficial or harsh, here we have the sovereign making a contract. In the absence of constitutional inhibitions the sovereign can make such contract as it pleases, and no one can object. In re American Boiler Works, supra.

The case of United States v. Ansonia Brass & Copper Co., 1910, 218 U.S. 452, 31 S.Ct. 49, 56, 54 L.Ed. 1107 has been referred to by both sides and demands consideration herein.

In the factual situation applicable to the Mohawk and the Galveston the court held that the state lien law was applicable. The reasons for this holding, in this court's opinion, were twofold. First, no provision was contained in the contracts for these vessels as to passing of title. Secondly, the Supreme Court analyzed the entire contracts, and stated, "We think that this contract, as the one for the Mohawk, was made in recognition of the rights of those who should furnish work or material for the vessel to secure their claims by liens which it was made the duty of the contractor to provide for in order to protect the title of the United States."

No such recognition on the part of the government, in the event Tahoe might become indebted to other persons who should perform labor or furnish materials in the building of the vessels, and who might become entitled by reason of such claims against Tahoe, to liens upon the property, is to be found in the contract between Tahoe and the government.

Since a transfer of the property under discussion actually took place, title to the propeller shafts vested in the government according to the provisions of the contract. The government's title to the property must prevail over any lien claim on the part of Thomson. See United States v. Cardinale Warehousing Corp., D.C.1946, 65 F.Supp. 760.

II. *Priority of Liens*

The Progress Payments & Liens Clause of the contract between the government and Tahoe provides in subparagraph (b) as follows:

"Any and all progress payments made hereunder shall be secured when made by a lien in favor of the government upon the articles and things contracted for on account of all payments so made and on all material or other property for or allocated to the performance of this contract * * * any lien provided for by virtue of this Section is paramount to all other liens under the provisions of an Act approved August 22, 1911 (Pub.L. No. 41, 62d Congress; 34 U.S.C. Sec. 582)."

The statute, 34 U.S.C.A. § 582, referred to in the above clause provides as follows:

"*Partial payments during work.* The Secretary of the Navy is authorized * * * to make partial payments from time to time during the progress of the work under all contracts made under

the Navy Department for public purposes, but not in excess of the value of work already done; and the contracts made shall provide for a lien in favor of the Government, which lien is made paramount to all other liens, upon the articles or thing contracted for on account of all payments so made".

Plaintiff's argument is based on two grounds: (1) the contract between Tahoe and the government is not binding on third parties who did not have notice of its provisions and (2) the lien statute of 1911, 34 U.S.C.A. § 582, gives priority only to a government lien on the vessel itself, and does not apply to the materials furnished for its construction and not yet physically incorporated therein.

■ The court is of the opinion that the Congressional intent in passing 34 U.S.C.A. § 582 was to give the fullest protection to the government for progress payments made by it. The events occurring in 1910 and 1911 when this statute was adopted indicate that Congress was familiar with the Ansonia decision and with the provisions contained in Navy shipbuilding contracts of the period which gave the government a lien on both the vessel and the parts and materials to be used in its construction.

In the Ansonia decision an earlier joint resolution of Congress passed May 5, 1894, No. 24, 28 Stat. 582, 583, is discussed, which resolution provided a lien "upon such vessels for all advances so made". In wording the 1911 Act Congress did not limit the application of the lien to the "vessel" itself but rather speaks of articles or things in the plural. The court concludes that the statutory language therefore not only embraces the finished product, or the product in some stage of construction, but all things of necessity contracted for ·to make it. Otherwise the government would be deprived of protection for its progress payments, and the court is of the opinion that the Congressional intent was to reestablish protection against lienors which the Ansonia case indicated was necessary under some circumstances.

In view of the fact that this court has concluded that 34 U.S.C.A. § 582 is sufficiently broad in its coverage to provide for a paramount lien in favor of the government on the propeller shafts, it is unnecessary to discuss the import of the Progress Payments & Liens Clause of the contract between the government and Tahoe.

■ Thomson has raised the following collateral question. It claims that one of the shafts delivered to the government is clearly outside the coverage of the government's lien. As stated in the stipulation of facts, one extra shaft was delivered by the supplier merely to insure an adequate amount of material to avoid the possibility of a shortage due to defective material or faulty workmanship. Tahoe certainly did not cause the additional shaft to be delivered to Thomson for any purpose other than fulfillment of its contract with the government. If Thomson had been able to deliver the completed shafts to Tahoe, it appears that it would have delivered the "extra" shaft, to insure that it had fulfilled its subcontract. It is the court's view that the government's lien extended to the extra shaft, and that the transfer from Tahoe gave the government title in the extra shaft.

In accord with the foregoing it is hereby ordered that judgment be entered herein in favor of the defendant and against the plaintiff. Each party to pay its own costs.