FERRANTE EQUIPMENT COMPANY, A NEW JERSEY COR-
PORATION, PLAINTIFF - APPELLANT, v. FOLEY MA-
CHINERY CO., A NEW JERSEY CORPORATION, DE-
FENDANT-RESPONDENT.

Argued May 9, 1967—Decided July 5, 1967.

*Mr. Peter W. Mitchell* argued the cause for plaintiff-appellant (*Messrs. Stern, Mitchell & Belson,* attorneys; *Mr. Mitchell,* on the brief).

*Mr. Sidney Krieger* argued the cause for defendant-respondent.

The opinion of the court was delivered by

SCHETTINO, J. The issue in this case is which of two lien holders has priority in a bulldozer.

The machine involved is self-propelled by a diesel engine. It does not have rubber tires but operates on two treads attached to the machine. It is an "off-the-road" piece of equipment used for general excavation and land clearance.

Ultimately, this decision rests upon whether this machine is a "motor vehicle" within the contemplation of the Garage Keepers and Automobile Repairmen Lien Act, *N. J. S.* 2A: 44–20 *et seq.*

On April 27, 1964 Richard Heckle purchased the bulldozer from plaintiff, Ferrante Equipment Company, pursuant to a conditional sales contract. In order to perfect its lien, plaintiff filed a financing statement in the office of the Secretary of State, pursuant to *N. J. S.* 12A:9–401. Heckle made monthly payments to plaintiff until May 1965, when he defaulted in his payments. On June 8, 1965 Heckle brought the bulldozer to defendant, Foley Machine Company (Foley), to have the machine repaired. The repairs were completed, but the bill

was not paid. On July 6, 1965 plaintiff demanded possession of the bulldozer, which was still in the possession of defendant, claiming that plaintiff had a lien on the bulldozer because Heckle had defaulted in his payments on the conditional sales contract. Defendant refused to give up possession of the bulldozer, claiming a lien on it in the amount of the value of the work and materials it provided.

Plaintiff instituted this action and obtained a writ of replevin ordering the sheriff to deliver the bulldozer to plaintiff. Thereafter, the sheriff took possession of the bulldozer and delivered it to plaintiff.

Defendant moved for a summary judgment and its motion was granted by the trial judge who held that the bulldozer was not a "motor vehicle" within the meaning of the Garage Keepers Lien Act,[1] *N. J. S.* 2A:44–20 *et seq.,* but rather that defendant had an artisan's lien which is superior to the lien acquired by plaintiff.

We certified plaintiff's appeal on our motion prior to argument in the Appellate Division.

We affirm on the ground that defendant has a common-law artisan's lien superior to plaintiff's security interest.

Plaintiff contends that a bulldozer is a motor vehicle within the contemplation of the Garage Keepers Lien Act and that establishments that repair and service such motor vehicles are limited to assert a garageman's lien and may not assert an artisan's lien. As a garageman's lien is expressly, by statute, subordinate to a perfected security interest, plaintiff claims it has a prior interest in the mortgaged property.

---

[1] *N. J. S.* 2A:44–21 provides:

"A garage keeper who shall store, maintain, keep or repair a motor vehicle or furnish gasoline, accessories or other supplies therefor, at the request or with the consent of the owner or his representative, shall have a lien upon the motor vehicle or any part thereof for the sum due * * *.

The lien shall not be superior to, nor affect a lien, title or interest of a person held by virtue of a prior conditional sale or a prior chattel mortgage properly recorded or a prior security interest perfected in accordance with chapter 9 of Title 12A of the New Jersey Statutes."

Defendant contends that it has an artisan's lien for the work and material provided in repairing the bulldozer and that because its lien is a common-law lien, defendant's lien is superior to that of plaintiff.

I

The artisan's lien is a common-law lien rather than a statutory lien. New Jersey recognizes the common-law possessory artisan's lien. See, *e. g., White v. Smith,* 44 *N. J. L.* 105 (*Sup. Ct.* 1882).

In New Jersey there is no statute establishing an artisan's lien. However, such a common-law lien is clearly recognized by *N. J. S.* 2A:44–32, which states as follows:

"A lien held by a person upon chattels in his possession for labor or materials furnished in the repair or construction thereof, shall not be waived, merged or impaired by the recovery of a judgment for the moneys due for such labor or material, but the lien may be enforced by levy and sale under execution upon the judgment."

Thus, the artisan's lien qualified as a lien arising under a rule of law as required by *N. J. S.* 12A:9–310, which provides as follows:

"When a person in the ordinary course of his business furnishes services or materials with respect to goods subject to a security interest, a lien upon goods in the possession of such person given by statute or rule of law for such materials or services takes priority over a perfected security interest unless the lien is statutory and the statute expressly provides otherwise."

Under this statute, the holder of an artisan's lien takes priority over the holder of a perfected security interest under the Uniform Commercial Code, *N. J. S.* 12A:1–101 *et seq.* This was, likewise, true before the adoption of the Code. See *Ruppert v. Zang,* 73 *N. J. L.* 216 (*Sup. Ct.* 1905). See also New Jersey Study Comment to *N. J. S.* 12A:9–310, *p.* 474.

To achieve the status of such a lien holder with respect to personal property, the artisan, by his labor and skill, must

contribute to the improvement of the personal property. If the artisan improves, betters, or repairs the property and thus enhances the value of the property by his skill, labor or materials, he acquires the right to a specific lien on the property. He retains this interest in the property until paid. See *Kalio Universal, Inc. v. B. A. M., Inc.*, 95 *N. J. Super.* 393 (*App. Div.* 1967); *Beck v. Nutrodynamics, Inc.*, 77 *N. J. Super.* 448, 451–452 (*Cty. Ct.* 1962); see generally, *Brown, Personal Property*, § 108, *pp.* 511–526 (*2d ed.* 1955). The lien includes the right to retain possession of personal property until the debt is paid.

Under the Garage Keepers Lien Act, which was adopted in 1915 and which was entitled "An Act for the better protection of garage keepers and automobile repairmen," Foley can claim only the statutory lien on motor vehicles upon which it worked. See *B. C. S. Corp. v. Frich*, 19 *N. J. Misc.* 129 (*D. Ct.* 1941). The Act gave the garage keeper a lien on a motor vehicle which he stores, maintains, keeps, repairs and for which he furnishes gasoline, accessories, and other supplies for motor vehicles.

The garage keeper's lien, thus, differs from the artisan's lien in many respects. The garage keeper's lien applies only to motor vehicles and it may be acquired even though the chattel's value is not enhanced, as long as some services or supplies mentioned in the Act are furnished. *Crucible Steel Co. v. Polack Tyre & Rubber Co.*, 92 *N. J. L.* 221, 227 (*E. & A.* 1918). *N. J. S.* 2A :44–21 specifically provides that a garage keeper's lien is subordinate to any perfected security interest. If, however, the garageman works on property other than motor vehicles, he may still claim his common-law right to an artisan's lien.

Thus, if defendant has an artisan's lien, its lien is superior to that of plaintiff's but it would apply only to the labor and materials which enhanced the value of the bulldozer. It would, thus, not include any lien that defendant had for charges resulting from maintenance or storage of the bulldozer, or

such services as gasoline, oil, grease, and other maintenance services.

## II

As stated above, this decision rests upon whether the bulldozer is a motor vehicle within the contemplation of the Garage Keepers Lien Act. For, if it is a motor vehicle, defendant has only a garage keeper's lien that is inferior to plaintiff's. If it is not a motor vehicle, defendant has an artisan's lien that is superior to plaintiff's. But, no definition of a "motor vehicle" accompanies the Garage Keepers Lien Act. Under *N. J. S. A.* 39:1–1 a "vehicle" is defined to include "every device in, upon or by which a person or property is or may be transported upon a highway." It also defines a "motor vehicle" to include "all vehicles propelled otherwise than by muscular power, excepting such vehicles as run upon rails or tracks."

We are convinced that the Legislature meant to include by the term "motor vehicle" only those self-propelled vehicles which are used on a highway primarily for purposes of transporting persons and property from place to place, *e. g.,* automobiles, trucks, and buses. As a bulldozer is used primarily for excavation and building purposes and only incidentally to transport persons or property from place to place, it should not be included in such a definition. See *In the Matter of Ferro Contracting Co., Inc.,* —— *F. 2d* —— (3 *Cir.* 1967).

That a bulldozer is not a motor vehicle within the contemplation of the garageman's lien act is strengthened by administrative interpretation of the motor vehicle certificate of ownership law. *N. J. S. A.* 39:10–1 *et seq.*

Under *N. J. S. A.* 39:10–11(B) and (C), whenever a security interest is created in a motor vehicle, it must be reported to the Division of Motor Vehicles so that both the owner of the vehicle and the secured party can have issued to them a certificate of title on which the security interest will be noted. The Division of Motor Vehicles has long adopted

the practice of refusing the title certificate benefits of the statute to equipment such as bulldozers.[2]

A long period of consistent construction by an administrative agency in the field of its expertise is entitled to great weight by the courts. The courts are reluctant to overturn such a construction. *In re Glen Rock*, 25 *N. J.* 241, 246 (1957); *Lane v. Holderman*, 23 *N. J.* 304, 322 (1957); *In re Plainfield-Union Water Co.*, 57 *N. J. Super.* 158, 177 (*App. Div.* 1959).

The statement annexed to *N. J. S.* 2A:44–21, when it was introduced into the Legislature in 1915, supports our construction. The statement reads as follows:

"The purpose of this bill is to give to garage keepers and automobile repairmen a lien for the amount of their bill upon the automobile or parts of same stored or repaired."

---

[2] Foley argues that if a bulldozer is in fact a motor vehicle, then a security interest in it is not perfected unless the encumbrance is noted upon a certificate of ownership issued by the Division of Motor Vehicles. As this has not been done, plaintiff's lien has not been perfected and therefore cannot assume priority. Defendant, in effect, challenges the Division of Motor Vehicles' practice of not subjecting bulldozers to the title certificate requirement.

Plaintiff replies that to perfect a conditional sales contract on a bulldozer, the filing provisions regarding conditional sales contracts and security interests apply and that the provisions applicable to filing of liens on motor vehicles are not applicable. Plaintiff urges that the Director of Motor Vehicles was correct in adopting the practice of not issuing certificates of ownership to the owners of excavation and building equipment such as bulldozers and that the correct practice was to file a financing statement with the Secretary of State, pursuant to *N. J. S.* 12A:9–401.

It is not necessary for us to decide whether to perfect its lien in May 1964, the date of plaintiff's filing with the Secretary of State, plaintiff had to file a financing statement with the Secretary of State for, even assuming that plaintiff's lien was perfected, this would still not be enough to enable plaintiff to have priority over defendant.

The question was cleared up. however, in December 1964 by the enactment of an amendment to *N. J. S. A.* 39:10–2, which provides for a new class of motor vehicles called "nonconventional type motor vehicles," which includes bulldozers. Such vehicles are not included in the class of "motor vehicles" for which the Division of Motor Vehicles would issue certificates of ownership. See statement annexed to this amendment to *N. J. S. A.* 39:10–2, *R. S. Cum. Supp.*, 1964, *p.* 900.

We conclude that the Legislature meant by the term "motor vehicle" to include only those self-propelled vehicles that were suitable for use on the public highways, *e. g.,* automobiles, buses, and trucks, and to exclude other self-propelled vehicles such as bulldozers, which are not ordinarily designed and used for transportation of persons and property on public streets.

## III

As a bulldozer is not a "motor vehicle" for purposes of *N. J. S.* 2A:44–21, defendant has a common-law artisan's lien on the bulldozer, whose value it enhanced through its labor and materials. As an artisan's lien is a common-law lien, defendant's lien is superior to that of plaintiff's lien.

Affirmed.

*For affirmance* — Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANE-MAN — 7.

*For reversal* — None.