Arthur E. Blyn J.
Most everyone knows about "freeloaders”. In each activity whether it be that of a trade union, tenant organization, consumer group, etc., there are those who benefit from such activities even though they labor not and just sit under their own fig trees. The slang expression used to describe such persons is — "freeloader”. They are a source of much irritation and even anger on the part of those who toil in the vineyards. Does the law sanction the "freeloader”?
That is the question posed by this case.
Plaintiff, a public fire adjuster, licensed by the New York State Insurance Department, was retained on July 17, 1970 by the owners (not parties to this action) of property located at 970 Boston Road, Bronx, New York, to adjust a loss due to extensive damage caused by fire on July 11, 1970. The defendant Bankers Federal Savings and Loan Association (hereinafter referred to as "Bank”) held a first mortgage on the property and was so named in the policies of fire insurance issued by the four defendant insurance companies (hereinafter referred to as "Companies”), which policies all contained the standard fire policy mortgagee clause. The owners of the property were in default in payments due under the terms of the mortgage. The unpaid balance of the mortgage at the time of the fire was $5,700. The total coverage under the four policies was $50,000. The appraisal value of the damage was well above that coverage.
Bank notified each of the four Companies of its status as *319 mortgagee by letters dated August 18, 1970 and filed proofs of loss along with covering letters with each of the four companies on November 13, 1970.
Plaintiff served notices of lien and retainer on each of the four companies in connection with its retention by the owners of the property as their adjuster shortly after the dates of the retainers and subsequently on or about September 10, 1970 filed proofs of loss with said Companies. Companies by July 2, 1971 paid Bank the sum of $5,996.67 representing the unpaid mortgage balance and interest thereon and Bank at that time assigned its rights under the mortgage to Companies.
Plaintiff thereafter and on or about August 9, 1972, more than one year after the date of the payment to Bank, advised Bank and Companies by letter of its claim of commissions for services performed in connection with the adjustment of the loss as to the portion paid to Bank.
There is no question but that Bank did very little in connection with its claim. In the opinion of the court Bank did sit back while plaintiff carried the ball even using information to complete its proofs of loss, although secured from a source other than plaintiff, which information undoubtedly was the result of plaintiff’s efforts. Bank knew of plaintiff’s activities and efforts to adjust the loss on behalf of the owners of the property.
Plaintiff then commenced the within litigation setting forth three causes of action. The first cause against Bank alleged a breach of agreement for professional adjustment services; the second also against Bank was in quantum meruit for such services; the third was against Companies alleging negligent and illegal conduct by Companies in making payment of $5,996.67 to Bank; each cause sought damages in the sum of $479.73 representing a percentage of such payment. Both Bank and Companies entered general denials and Companies cross-claimed against Bank.
The case was tried without jury.
The relationship of Bank to the owners, Companies and plaintiff must first be explored. Bank appeared in each of the four fire insurance policies issued by Companies as the named mortgagee in the standard mortgagee clause. It is well settled in this and most other States that a mortgagee clause in a standard fire policy creates an independent insurance of the mortgagee’s interest just as if it had received a separate policy from the insurer but without any inconsistent or repugnant *320 conditions imposed by the policy upon the owner of the insured property and free from invalidation by the latter’s "act or neglect”. (Syracuse Sav. Bank v Yorkshire Ins. Co., 301 NY 403.)
Thus, for example, no settlement between the owner (or its agent, which includes a public adjuster retained by the owner) and the insurer can operate in any way to the detriment of the mortgagee. (Hathaway v Orient Ins. Co., 134 NY 409; McDowell v St. Paul Fire & Mar. Ins. Co., 207 NY 482.)
Companies therefore had to deal with Bank as though Bank had separate insurance policies covering its interest — that is the unpaid balance of the defaulted mortgage at the time of the fire — without regard to any acts of the owners or their agent, the plaintiff herein. Plaintiff therefore has the burden of establishing that it was retained by Bank to act as an adjuster on its behalf.
In attempting to sustain such burden plaintiff is met head on by section 123 (subd 3, par [b]) of the Insurance Law. The relevant portion of that section sets forth that: "No adjuster shall have any right to compensation from any insured for or on account of services rendered to such insured as a public adjuster unless such right to compensation is based upon a written memorandum, signed by the party to be charged, and specifying or clearly defining the amount or extent of such compensation.” As stated by the court in analyzing the relationships between the parties it is clear that Bank is the insurer referred to by the language of the statute and thus is the "party to be charged”. There was no such written memorandum between the plaintiff and Bank.
Plaintiff attempts to get around this bar by arguing that there was an implied or quasi contract between itself and Bank. Aside from the fact that the cases cited by plaintiff for this proposition require some indication of an intention to pay by the party to be charged, and the court finds that there was no proof of such intention to pay the plaintiff’s commission— plaintiff cannot accomplish by indirection what section 123 (subd 3, par [b]) of the Insurance Law clearly and directly prohibits.
Plaintiff makes a further attempt to overcome this problem by arguing the existence of a principal-agent relationship between itself and Bank. The court finds no basis for such *321 relationship inasmuch as its existence depends upon an express, implied or apparent authority granted by the alleged principal (Bank) to its alleged agent (plaintiff) and the court finds no such grounds were established by the proof adduced at trial.
Plaintiff’s position is understandable emotionally. Bank may well have benefited from the work done by plaintiff for the owners. Such feelings of outrage however have no basis in law. Even more egregious examples of freeloading can be found where workmen’s compensation carriers and hospitals benefit in the most direct manner by virtue of liens, under the law, on the proceeds of negligence cases where the return to the lienors could only have occurred by reason of the hard work and effectiveness of the attorneys representing the plaintiffs in such cases.
The court is sympathetic to plaintiff’s position, but the law is clear and affords no relief. As a matter of fact as the coup de grace the court in its own research came across a case decided by the Appellate Term, First Department, which deals with the precise issue raised here. (Callahan v Railroad Fed. Sav. & Loan Assn., 36 NYS2d 550.) That case involved a suit by an adjuster against a bank-mortgagee for services rendered in connection with a settlement of a loss. Plaintiff’s services in that case were rendered pursuant to a contract between himself and the owner of the property. He had no contractual relations with the bank-mortgagee although the latter knew that the owner was attempting to settle the loss through the plaintiff adjuster. The court stated that the bank-mortgagee was not put on notice of any facts indicating that the adjuster was to be paid for his services out of funds payable to the bank-mortgagee. The court went on to say (pp 550-551): "The fact that defendant * * * the [mortgagee] received the benefit of plaintiff’s services is not sufficient in and of itself to charge it with liability to plaintiff” (Matter of Loomis, 273 NY 76, 82).
The first two causes of action against Bank are therefor dismissed. Such disposition must necessarily result in the dismissal of the third cause of action against Companies inasmuch as they did what the law required and therefore cannot be held on any theory of negligence or illegal conduct.