THE FARMERS & MERCHANTS NATIONAL BANK OF BRIDGETON, ETC., PLAINTIFF, v. BENJAMIN BOYMANN ET UX. *ET AL.*, DEFENDANTS.

Cumberland County Court
Law Division

December 15, 1977.

Mr. *Isaac I. Serata* for plaintiff.

Mr. *Harold A. Horwitz* for petitioner Eva Erickson.

MILLER, J. C. C. This matter is before the court on the motion of petitioner Eva Erickson seeking payment of $3,003 from funds in the hands of a receiver appointed by the court to oversee certain attached property of defendant Benjamin

Boymann. This money allegedly represents charges for unpaid rent and utilities due petitioner from defendant at the time of the removal of the attached goods and chattels by the receiver. This motion is opposed by the execution creditor, Farmers & Merchants National Bank of Bridgeton, on the grounds that petitioner is not entitled to a priority over the attached goods.

Defendant is insolvent. Petitioner is the owner of the premises wherein defendant formerly carried on his restaurant business. The bank obtained a writ of attachment against all the property of defendant after he defaulted on a demand note. On February 28, 1977 a general receiver over the attached property was appointed by this court. The attached goods remained on petitioner's premises until August 31, 1977, at which time they were sold by the receiver. Pursuant to a lease agreement entered into between petitioner and defendant, the rent amount was fixed at $150 a month, and defendant was required to pay for all utilities, electricity, heat and water services. However, for the period of June 1 through February 28, while defendant was in possession, no rent was paid, nor was any rent forthcoming for the period March 1 through September 9 while the receiver was in possession of the demised premises. In addition, petitioner was required to pay all utility, electricity, heat and water charges for the same periods since payment for same was not made by defendant or receiver.

Petitioner contends that she is entitled to payment of all outstanding rent and reimbursement for all utility bills before the attached goods and chattels can be removed from the demised premises. She rests her case upon *N. J. S. A.* 2A:42-1, which provides that no goods and chattels upon leased real estate may be taken by virtue of any process, including attachment and execution, unless the party suing out of such process pays the landlord all unpaid rent, not exceeding one year's rent, due from such premises at the time of the taking of such personalty by virtue of such process or

which shall have accrued up to the day of removal of the goods and chattels from the premises.

The creditor argues that although .the statute gives the landlord a preference over other creditors of the tenant, such preference extends to unpaid rent only and is limited to an amount equal to but not greater than one year's rental value. The bank contends that the statutory preference for unpaid rent ceases when attachment occurs and that petitioner landlord is entitled only to unpaid rent as of the date of attachment. The bank further contends that the fuel and utility bills do not constitute rent and are not within the purview of this statute, and thus the landlord is not entitled to receive · a priority over other creditors for these outstanding unpaid amounts.

I

■■ The statute under which this claim is made was originally introduced into our law by the act of March 10, 1795, § 4 (*Paterson Laws* 164). That section is a copy of the English statute, 8 *Anne, c.* 14, § 1. *Ryerson v. Quackenbush,* 26 *N. J. L.* 236 (Sup. Ct. 1857) ; *Central Bank of New Jersey v. Peterson,* 24 *N. J. L.* 668 (Sup. Ct. 1855) ; *Vezzetti v. Model Garage, Inc.,* 119 *N. J. Eq.* 482 (E. & A. 1936). The underlying policy of this statute has remained unchanged since its inception. It is intended to give the landlord a specific lien on the tenant's property located on the demised premises against all executions to the extent of a year's rent. The statute however, does not give the landlord a "lien" in the ordinary and proper sense. It gives him merely the right to a preference in payment, out of the tenant's goods and chattels on the demised premises, over other creditors, including those holding executions, who are not lienholders. *In Re Spies-Alper Co.,* 231 *F.* 535 (D. C. D. N. J. 1916), *Central Bank of New Jersey v. Peterson, supra.* The. statute leaves the tenant at perfect liberty to dispose of his goods and chattels absolutely, yet as between the landlord and

other creditors of the tenant, when such creditors come armed with any process whatsoever, the statute is the landlord's shield. It absolutely forbids the removal of the tenant's goods until the rent then due, subject to the one-year limitation, is paid. Although the landlord has no lien by which he can enforce the payment of rent, but must institute proceedings in his own behalf in order to accomplish that, the law preserves to him, as against every other process, the retention of the goods upon the premises until the rent be paid. *Wood v. McCardell, West & Farrell Carriage Co.,* 49 *N. J. Eq.* 433 (Ch. 1892).

Agreeing with the construction given our statute the court in *In re Waldslein Co.,* 24 *F. Supp.* 747 (D. C. D. N. J. 1938), stated:

On reflection, the reason for so construing the statute is clear. Prior to the issue of an execution, the landlord could distrain for all unpaid rent and collect the same. When, however, the tenant's goods were taken in execution by a creditor, the landlord's right to interfere with such execution was by the statute taken away, but, in view of such deprivation, the statute gave the landlord a lien for 'any sum of money due for rent'. But in recognition of the execution creditor's right it limited the lien of the landlord's priority to the measure of a single year's rental. [at 748]

The statutory preference given the landlord is for all rent, not to exceed one year's rent, due at the time of the taking of the tenant's goods and chattels by virtue of any execution, attachment or other process. The bank contends however, that the one-year period for which rent may be due must be tolled by virtue of the issuance of a writ of attachment. It is argued that this is the date of the "taking" of the goods and chattels as contemplated under the statute.

This argument is without merit. The courts of this State have consistently held that the appointment of a receiver with power to take possession of goods and chattels of an insolvent tenant constitutes a "taking" or removal within the meaning of the statute. See *Wood v. McCardell, West & Farrell Carriage Co., supra* at 49 *N. J. Eq.* 434; *Franz Realty Co. v.*

*Welsh,* 86 *N. J. Eq.* 228 (E. & A. 1916), *Weinstein v. Herman,* 81 *N. J. Eq.* 236 (Ch. 1913), *Hatch v. Van Dervoort,* 54 *N. J. Eq.* 511 (Ch. 1896).

█ Guided by these principles petitioner landlord is entitled, as a preference under *N. J. S. A.* 2A:42–1, to the full amount of rent unpaid and owing from June 1, 1976 through February 28, 1977, the date of the appointment of the receiver, this amount not being in excess of the one-year's rental value limitation. Furthermore, this court finds the fair rental value, in accordance with the lease agreement entered into by the parties, to be $150 a month.

## II

We now direct our attention to the periods from March 1, 1977 to September 9, 1977, when the receiver occupied the demised premises and warehoused the debtor's goods thereon. No compensation, as rental value, has been paid by either the creditor or receiver to the landlord for this period.

█ Where the insolvent holds a lease with covenants binding him to pay rent, the receiver in insolvency may elect to waive the lease agreement, and neither enter upon the demised premises nor do any other act signifying his acceptance of the term of the lease. If he so chooses, he is not liable for any future rent, and the lessor must stand in the position of a general creditor of the insolvent with regard to any other moneys due under the lease. On the other hand, if the receiver chooses to take possession of or assume the management of or do some act indicating his intention to accept the term, a privity at once arises between him and the landlord, and he becomes bound for the rent in full. *Bolles v. Crescent Drug & Chemical Co.,* 53 *N. J. Eq.* 614 (Ch. 1895) ; *Suydam v. Receivers of the Bank of New Brunswick,* 3 *N. J. Eq.* 114 (Ch. 1834) ; *Klein v. Gavenesch Co.,* 64 *N. J. Eq.* 50 (Ch. 1902) ; *Block v. Bell Furniture Co.,* 111 *N. J. Eq* 551 (E. & A. 1952).

The receiver here cannot be said to have elected to waive the lease contract and thus have escaped liability for the payment of rent thereunder. The goods and chattels attached by the creditor and under the supervision of the receiver remained warehoused in the premises of the landlord for 8-½ months from the date of attachment. During this period the landlord was unable to lease the premises or use it in any way. As there is no contention that the monthly rental is excessive, and since this court has found the same to represent a fair rental for said premises, the receiver, as an administrative expense, is liable for the value of the monthly rental for the aforementioned period during which use and occupation was had by him. *Greenspan & Greenberger Co. v. Goerke Co.*, 112 *N. J. Eq.* 391 (Ch. 1933) ; *Block v. Bell Furniture Co., supra.*

### III

Petitioner seeks reimbursement for all fuel, water, electric and other utility expenses incurred but unpaid during the periods in which the defendant and receiver were in possession, June 1, 1976 through February 28, 1977 and March 1, 1977 through September 9, 1977, respectively. The bank argues that the preference accorded the landlord under *N. J. S. A.* 2A:42–1 is limited to rent only and does not include charges for fuel, utility or repair expenses.

The lease agreement requires the defendant to pay rent in the amount of $150 a month, pay for all utilities, electricity, heat and water services and to make all repairs, as may be required to keep the premises in a safe and lawful condition. Construing similar covenants our courts have allowed such accrued expenses as preferences under the statute where the lease provides for the payment of such expenses as part of the annual rent. Where language of the lease merely acts to allocate, upon a specific party, the responsibility for providing services, performing duties or paying for same and does not contain language incorporating the related expenses as part

of the annual rent, entitlement to the statutory preference has been withheld. *Greenspan & Greenberger Co. v. Goerke Co.* and *Block v. Bell Furniture Co., supra; Orenstein v. Orenstein Truck Co., Inc.,* 117 *N. J. Eq.* 546 (Ch. 1935).

 A review of the lease fails to disclose any provision whereby the utility and repair expenses were made a part of the rent. Accordingly, charges for such expenses accrued while the defendant was in possession are outside the ambit of the statute and cannot be allowed. However, the charges accrued while the receiver was in possession of the demised premises are properly allowed the petitioner. When the receiver took possession of the demised premises he elected to assume all obligations under the lease. A privity arose between him and the landlord petitioner, and he was obliged to fully perform the terms of the lease. If the receiver desired to create a different tenancy, he was free to so negotiate. He did not. Instead, he accepted the original lease agreement, and he cannot escape the terms of his bargain. For this reason all utility, electricity, heat and water charges are to be paid by the receiver as administrative expenses. Payment is to be made to the petitioner as reimbursement for such amounts as advanced by her to the utility companies in satisfaction for the services rendered.

To summarize the above:

(a) The fair rental value for the demised premises is fixed at $150 a month.

(b) The rent accrued for the period June 1, 1976 through February 28, 1977 while defendant was in possession of the premises is allowed as a preference pursuant to *N. J. S. A.* 2A:42-1.

(c) The rent accrued for the period March 1, 1977 through September 9, 1977 while the receiver was in possession is allowed and shall be paid as an administrative expense by the receiver.

(d) The charges for utility and repair costs accrued while the defendant was in possession are disallowed as a preference.

(c) The charges for utility and repair costs accrued while the receiver was in possession are to be paid by the receiver as an administrative expense.