In re Anthony ALSTON & Lorraine Alston, Debtors.

Stuart Kramer and TNT Construction, Plaintiffs,

v.

Anthony Alston and Lorraine Alston, Elizabeth Rose and Hilton Rose, Defendants.

Bankruptcy No. 00–61822 RTL.
Adversary No. 03–2873 RTL.

United States Bankruptcy Court,
D. New Jersey.

March 24, 2005.

Raffi Momjian, Esq., for Plaintiffs.

MeLinda Hawkins Taylor, Esq., for Defendants, Elizabeth & Hilton Rose.

## OPINION

RAYMOND T. LYONS, Bankruptcy Judge.

The issues in this adversary proceeding are:

1. Does an insurance adjuster have an equitable lien on the proceeds of a fire insurance policy?

2. If so, does the adjuster's equitable lien have priority over the claim to the insurance proceeds by secured creditors with a mortgage on the damaged real property?

Because (a) the adjuster's efforts created the fund, (b) the insured agreed to compensate the adjuster from the fund, and (c) the secured creditor's rights to the fund are derivative of the insured's, the court holds that the insurance adjuster has an equitable lien on the fire insurance proceeds with priority over the secured creditors.

## JURISDICTION

The bankruptcy court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(a) and (b); 28 U.S.C. § 157(a) and the Standing Order of the United States District Court for the District of New Jersey dated July 23, 1984 referring all cases under Title 11 and all proceedings arising under Title 11 of the United States Code to the bankruptcy judges in this district. This is a core proceeding that may be heard and decided by a bankruptcy judge pursuant to 28 U.S.C. § 157(b)(2)(K) (validity, extent or priority of liens).

## FACTS AND PROCEDURAL HISTORY

Anthony and Lorraine Alston (the "Debtors") owned a commercial property in Irvington, New Jersey that they leased to tenants. Mr. & Mrs. Alston had purchased the property from Hilton and Elizabeth Rose who took back a purchase money mortgage to secure payment of the balance of the purchase price. The mortgage required the Alstons to insure the property, which they did, and to name the Roses on the policy, which they did not. Fire severely damaged the building on December 29, 1999. The Alstons retained plaintiff, Stuart Kramer[1], a licensed insurance adjuster[2], to assist in the settlement of their claim under their insurance policies. The adjuster's compensation was agreed at 5% of the amounts recovered

---

1. Actually, the Debtors' written agreement is with Kramer, Smith, Torres & Valvano, LLC not with Mr. Kramer. Although Stuart Kramer is the plaintiff, not Kramer, Smith, Torres & Valvano, LLC, no one has questioned Mr. Kramer's standing and the court treats him as the agent for his company.

2. *See* Public Adjusters' Licensing Act, N.J. Stat. Ann. 17:22B–1, *et. seq.* and Licensing of Public Adjusters, N.J.A.C. 11:1–37.1 *et. seq.* Holmes' APPLEMAN ON INSURANCE LAW AND PRACTICE (2nd Ed.2004), § 49.3 and § 77.7.

by the Alstons from their insurance companies[3]; and Alston assigned the insurance proceeds to Kramer to secure his fee. Kramer assembled the information to present the insurance claim, prepared the sworn statements and proof of loss, submitted the same to the insurance companies and communicated with the independent adjuster hired by the insurance companies to settle the lose.

About a year after the fire, but before the claim was settled, the Alstons filed a voluntary petition under chapter 13 of the Bankruptcy Code. Mr. & Mrs. Rose were listed as secured creditors holding a mortgage on the commercial property. The insurance adjuster was not listed as a creditor and did not receive notice of the bankruptcy filing.

After filing their bankruptcy petition, the Debtors' insurance claim remained unresolved. The Debtors hired special counsel to commence a lawsuit against the insurance carrier in state court. The lawsuit settled for $160,000.00. After payment of the 1/3 contingency fee to special counsel, approximately $106,000.00 was available as a net settlement. Mr. & Mrs. Rose, the mortgagees, claimed that they were entitled to the net proceeds of the settlement. The note and mortgage given by the Alstons to the Roses required the Alstons to insure their property against fire loss for the benefit of the Roses. The Alstons had obtained fire insurance but neglected to have the Roses' interest as mortgagee noted on the policy. The court previously ruled that when a mortgage requires the mortgagor to carry insurance, the mortgagee has an equitable lien on the insurance proceeds. *In re Moore,* 54 B.R. 781 (Bankr.E.D.N.C.1985); *In re Natale,* 174 B.R. 362 (Bankr.D.R.I.1994).[4]

Kramer first learned of the settlement of the insurance litigation through communication from the insurance carrier. Kramer then initiated this adversary proceeding asserting an equitable lien on the proceeds of the fire insurance litigation and priority over the secured creditors.

## DISCUSSION

New Jersey state law governs whether the adjuster has a lien on the insurance proceeds. No statute gives a public adjuster a lien; therefore, the adjuster claims an equitable lien. Neither the New Jersey Supreme Court nor any other New Jersey state court has addressed the issue of a public adjuster's equitable lien. Likewise, there are few decisions from other states on this subject. Cozen, INSURING REAL PROPERTY § 26.02 (2004). There are, however, two decisions of the federal courts located in New Jersey discussing public adjuster's rights in insurance proceeds, though neither is particularly helpful.

In *Home Ins. Co. v. Gigi Fashions, Inc.,* 267 F.Supp. 958 (D.N.J.1967) a public adjuster claimed the first right to a percentage of recovery from an insurance carrier.

3. "As a general rule, public adjusters work for contingency fees." Stephen A. Cozen, INSURING REAL PROPERTY § 26.02 (2004). See, *Willow Inn, Inc. v. Public Service Mutual Ins. Co.,* 399 F.3d 224 (3d Cir.2005).

4. This opinion is limited to the facts of this case, since a different result might be reached if the mortgagee had been named on the insurance policy. See *Public Adjustment Bureau Inc., v. Bankers Federal Savings & Loan Assoc.,* 83 Misc.2d 317, 371 N.Y.S.2d 347 (Civil Ct.1975), *aff'd* 61 A.D.2d 930, 403 N.Y.S.2d 19 (App.Div.1978) (standard mortgage clause creates an independent insurance of mortgagee's interest without "inconsistent or repugnant conditions imposed by the policy upon the owner of the insured property"). *See also, Stanziale v. Finova Capital Corp. (In re Tower Air, Inc.),* 397 F.3d 191 (3d Cir. 2005).

None of the other parties competing for the proceeds disputed the public adjuster's claim to be paid first, and the court approved without analyzing that claim.

In *Home Ins. Co. v. B.B.Rider Corp.*, 212 F.Supp. 457 (D.N.J.1963) the fire adjuster sought an equitable lien in the amount of 10% of the proceeds pursuant to a written agreement with the insured. The public adjuster cited analogous case law recognizing an attorney's equitable lien on funds generated in litigation. See *Wilson v. Seeber*, 72 N.J.Eq. 523, 66 A. 909 (Chancery 1907); *Klacik v. Kovacs*, 111 N.J.Super. 307, 268 A.2d 305 (App.Div.1970), *cert. den.* 57 N.J. 237, 271 A.2d 428 (1970). The United States had claims to the proceeds for withholding and excise taxes. Without much discussion, the court disregarded the fire adjuster's claim stating that he had only a contract right on the rationale that:

> A debtor may not impair the rights of the United States established through perfection of a tax lien which has already attached to the debtor's property, by undertaking performance of a contractual obligation.

*Id.* The lack of analysis leaves *B.B.Rider* as less than persuasive authority.

Therefore, in the absence of a decision on point, it is the task of this court to predict how the New Jersey Supreme Court would rule if presented with the same issues. *See State Farm Mut. Auto Ins. Co. v. Coviello*, 233 F.3d 710, 713 (3d Cir.2000); *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 237, 61 S.Ct. 179, 85 L.Ed. 139 (1940).

## I. *Equitable Lien of the Insurance Adjuster*

▮ In bankruptcy, the validity and extent of liens is ruled by state law, unless a federal policy would be frustrated by its application. *Lewis v. Diethorn*, 893 F.2d 648, 650 (3d.Cir.1990). The Supreme Court of New Jersey articulated the principles behind equitable liens over 30 years ago in *In re Hoffman*, 63 N.J. 69, 304 A.2d 721 (1973). In *Hoffman*, an accountant had prepared income tax returns for his client, who died a few years later. Instead of a judgment, all the accountant had was a mere promise from the decedent to pay him from the proceeds of the income tax refunds. The trial court deemed the accountant's claim that of a general creditor, since the accountant had not obtained a judgment against the decedent. The Supreme Court reversed, stating that because the accountant was seeking payment of its claim pursuant to an equitable lien, his lack of a judgment was irrelevant. The promise of decedent to use the tax return proceeds to pay the accountant was relevant, and an equitable lien was imposed.

▮ The court stated that an equitable lien may be raised "*ex aequo et bono*,[5] according to the dictates of equity and conscience, as where a contract of reimbursement could be implied at law." *Id.* at 77, 304 A.2d 721, citing *Temple v. Clinton Trust Co.*, 1 N.J. 219, 62 A.2d 690 (1948). The equitable lien doctrine "is founded on that cardinal maxim of equity which regards as done that which has been agreed to be, and ought to have been, done." *Id.* citing *Rutherford Nat'l Bank v. H.R. Bogle & Co.*, 114 N.J.Eq. 571, 169 A. 180 (Chan.1933). When one is promised payment "for services rendered out of a fund created in whole or in part by the efforts of the promisee, a lien in favor of the promisee will attach to the fund when it comes into existence." *Hoffman* at 77, 304 A.2d 721, citing *Morrison Flying Service*

---

5. According to what is equitable and good. Black's Law Dictionary (8th ed.2004).

*v. Deming Nat'l Bank*, 404 F.2d 856, 861 (10th Cir.1968), *cert den.* 393 U.S. 1020, 89 S.Ct. 628, 21 L.Ed.2d 565 (1969); *Mitchell v. Bowman*, 123 F.2d 445, 447 (10th Cir.1941). So long as there is intent to pledge property as security for an obligation and the property or thing to be pledged is sufficiently identified, then the equitable lien will follow.

The *Hoffman* decision was the basis for the analytical framework for equitable liens articulated in *Batt v. Scully*, 168 B.R. 541 (D.N.J.1994). In *Batt*, the court stated that courts in New Jersey utilize "two guiding principles in deciding whether to grant an equitable lien." *Id.* at 546. First, the parties must intend to pledge property as security for an obligation. Second, the courts consider "which party is responsible for creating the funds on which the lien is to be imposed." *Batt* at 546, citing *Hoffman*, 63 N.J. at 77, 304 A.2d 721.

Equity has been used to impose a lien in favor of real estate brokers for their commissions. *Cohen v. Estate of Sheridan*, 218 N.J.Super. 565, 528 A.2d 101 (Chan.Div.1987); *In re L.D. Patella Constr. Corp.*, 114 B.R. 53 (Bankr.N.J. 1990) (broker has no statutory lien for commission in New Jersey, but there is an equitable lien); accord, *Batt v. Scully*, 168 B.R. 541 (D.N.J.1994) (recognizing broker's equitable lien, but declining to extend the holding of *Cohen* and *Patella* to salespersons who worked for broker). The court in *Cohen*, citing *Hoffman*, noted that brokers expect their fees to be paid out of the sale proceeds, therefore they should be granted the protection of equity in securing that fee. *Cohen* at 570, 528 A.2d 101. *Compare, VRG Corp. v. GKN Realty Corp.* 135 N.J. 539, 641 A.2d 519 (1994) (Broker not entitled to equitable lien on rents).

Prior to the passage of the Attorney's Lien Act of 1914, N.J.Rev.Stat. § 2:20–7 (1937), N.J. Stat. Ann. 2A:13–5, New Jersey courts recognized attorneys' equitable liens for services upon judgments they had obtained for their client. In *Wilson*, Vice Chancellor Pitney undertook an exhaustive review of authorities and ruled that an attorney was entitled to an equitable lien, pursuant to a contingency fee arrangement, on monies his client had recovered. Prior to *Wilson*, it was recognized that when an attorney had obtained "a judgment or order for payment of money in favor of his client he has what is sometimes called a lien thereon for his costs." *Delaney v. Husband*, 64 N.J.L. 275, 276, 45 A. 265, 266 (E & A, 1900) (internal quotations omitted), citing *Braden v. Ward*, 42 N.J.L. 518 (Supreme Court, 1880); accord, *Metro. Life Ins. Co. v. Poliakoff*, 123 N.J.Eq. 524, 526–530, 198 A. 852 (Chan.1938); *Norrell v. Chasan*, 125 N.J.Eq. 230, 235–236, 4 A.2d 88 (E & A, 1939) ("[t]he right thus given the unpaid attorney is rooted in equitable considerations").

In reviewing the facts of this case, equitable principles lead to a finding of an equitable lien on the insurance proceeds for the insurance adjuster. To begin with, while there was no written agreement between the adjuster and the secured creditors, there was a written agreement signed by the adjuster and the Debtors on December 29, 1999. This brief, one-page document recites the services the adjuster agreed to render and states that the signatories "hereby agree to pay and assign to [the adjuster] for services rendered 5% when adjusted, paid or otherwise recovered from the insurance companies." Thus, the adjuster expended effort and resources under the belief that he would be paid out of the insurance proceeds. The secured creditors concede that the adjuster did in fact render services—including reviewing the insurance coverage,

preparing and submitting necessary documentation to the insurance company—which resulted in a settlement of insurance claims.

Applying the analytical framework of *Batt*, both elements of an equitable lien exist. First, there is the agreement between debtors and adjuster pledging property—the insurance proceeds—as security for an obligation—to advise and assist in the adjustment and settlement of the insurance policy. Second, the party responsible for creating the funds, the adjuster, was promised payment out of the insurance proceeds for his efforts in getting those proceeds released. Accordingly, this court finds an equitable lien upon the insurance settlement proceeds in favor of the adjuster.

## II. *Priority of the Fire Adjuster's Lien*

■ The priority of the adjuster's equitable lien is the next question. Once again no New Jersey case is directly on point. "One case has held that if a public adjuster is retained by a named insured, and therefore has a contractual right to payment from that insured, he is probably not entitled to *quantum meruit* recovery from other insureds, such as a loss payee or mortgagee insured pursuant to a standard union mortgage clause." Cozen, INSURING REAL PROPERTY § 26.02[3] (2004) citing *Public Adjustment Bureau, Inc. v. Bankers Federal Savings & Loan Assoc.,* 83 Misc.2d 317, 371 N.Y.S.2d 347 (Civil Ct.1975), *aff'd* 61 A.D.2d 930, 403 N.Y.S.2d 19 (1978).

Most analogous is a case cited by plaintiffs, *First Federal Savings and Loan Assoc. v. Nieder,* 163 N.J.Super. 308, 394 A.2d 896 (App.Div.1978). In *First Federal,* a mortgagor suffered fire damage and eventually obtained a judgment against the insurance carrier and its agents. The trial court ruled that the mortgagee was entitled to the proceeds of the judgment by reason of a provision in the mortgage requiring the mortgagor to insure the property. However, the court also ruled that the lien of the attorney for the mortgagor had to be paid prior to the mortgagee. The Appellate Division upheld the trial court's decision, stating that while the mortgagee was subrogated to the mortgagor's right to insurance proceeds, "it [also] stands in her shoes as well with respect to the lien of her attorney." *Id.* at 313, 394 A.2d 896. The court concluded that "it would be unconscionable to allow [the mortgagee] to take the fund without bearing the legal expense incurred in creating it." *Id.* at 314, 394 A.2d 896.

■ There is also the treatment of the common-law [6] artisan's lien by New Jersey courts. The common-law artisan's lien has long been recognized in New Jersey. See *White v. Smith,* 44 N.J.L. 105, 1882 WL 8479 (Supreme Court 1882). When an artisan improves property, and therefore enhances the value of the property by his skill, labor, or materials, he acquires the right to a specific lien on the property. *Ferrante Equipment Company v. Foley Machinery Co.,* 49 N.J. 432, 437, 231 A.2d 208 (1967); *White,* at 109 (artisan's lien attaches when a bailee "has expended his skill and labor in the improvement of the chattel and thereby conferred an additional value on it"). This right is not extinguished until the lienholder is paid. *Ferrante,* 49 N.J. at 437, 231 A.2d 208. The priority of the artisan's lien was examined by the New Jersey Supreme Court in *Ferrante.*

---

6. Common-law liens are possessory, as opposed to non-possessory, equitable liens. 4 POMEROY, § 1233, p. 692–693.

In *Ferrante,* an equipment company sold a bulldozer to buyer and promptly filed a financing statement under the Uniform Commercial Code. After defaulting on payments, the buyer brought the bulldozer to a mechanic to get it repaired, then subsequently failed to pay the bill for such repairs. The secured creditor sued for possession of the bulldozer. The mechanic refused to surrender possession, arguing that it had a lien on the amount of work and materials it provided. The court reviewed the statute governing U.C.C. priorities,[7] which states that a possessory lien "has priority over a security interest in the goods unless the lien is created by a statute that expressly provides otherwise." *Id.* at 436, 231 A.2d 208. The court then ruled that "the holder of an artisan's lien takes priority over the holder of a perfected security interest under the Uniform Commercial Code." *Id.* at 436, 231 A.2d 208. The court's reasoning was that the mechanic's efforts had enhanced the value of the bulldozer, creating a common-law artisan's lien superior to that of the equipment company that had recorded its lien. *Ferrante* illustrates the importance New Jersey courts place on compensating those whose efforts enhance the value of property.

Examination of statutory liens might shed light on the public policy recognized by the legislature. *See N.J.S.A.* 2A:44–125 *et. seq.* (Municipal Mechanics' Lien Law); *N.J.S.A.* 2A:42–1 (Landlord's Lien); *N.J.S.A.* 12A:7–209 (Warehouseman's Lien); *N.J.S.A.* 2A:44–20 (Garage Keepers Lien); N.J.S.A. 2A:13–5 (Attorney's Lien); N.J.S.A. 2A:44A–1 et. seq. (Construction Lien Law). These straight-forward priority schemes illustrate the legislature's preference for giving priority to those who goods or services bring value, or increase value to the collateral on which others

claim. See *Craft v. Stevenson Lumber Yard, Inc.* 179 N.J. 56, 68, 843 A.2d 1076 (2004)(main purpose of Construction Lien Law and Mechanic's Lien law is to help secure those contractors and suppliers who furnish goods and services pursuant to a written contract); *U.S. v. Cardinale Warehousing Corp.,* 65 F.Supp. 760, 761 (D.N.J. 1946)(the Warehouseman's Lien Act is "a method of assuring payment of services"); *Farmers and Merchants Nat'l Bank of Bridgeton v. Boymann,* 155 N.J.Super. 120, 124, 382 A.2d 437 (Law Div.1977)(Landlord's Lien law protects landlord's right to up to a year's back-rent, therefore "as between landlord and other creditors of the tenant, when such creditors come armed with any process whatsoever, the statute is the landlord's shield"); *Crucible Steel Co. of America v. Polack Tyre & Rubber,* 92 N.J.L. 221, 227, 104 A. 324 (E & A, 1918) (Garagekeeper's Act was designed to protect those that furnish good and services).

The court is particularly persuaded, however, by the ruling and reasoning of *First Federal.* In *First Federal,* as in this case, a secured creditor had rights to proceeds of an insurance policy by stepping into the shoes of the named insured, the mortgagor. In both First Federal and this case, there is a third-party whose efforts created the fund. To permit the secured creditor to reap the benefits of the insurance settlement without assuring full payment to the insurance adjusters whose efforts lead to that settlement would be inequitable. Therefore, the court finds that the adjuster's equitable lien on the insurance settlement proceeds must be paid in full before release of that fund to the secured creditors.

### CONCLUSION

The insured and the adjuster agreed that the adjuster's fee would be paid from

---

7. The Court reviewed *N.J.S.A.* 12A:9–310, now codified as *N.J.S.A.* 12A:9–333.

the fire insurance proceeds and the adjuster's efforts created the fund of insurance proceeds. Therefore, the insurance adjuster has an equitable lien on the proceeds of the fire insurance policies. Since the secured creditors' rights to the insurance proceeds are derivative of the insured's, the adjuster's equitable lien has priority over the claims of the secured creditors to the same proceeds of the fire insurance policy covering the damaged collateral. The escrow agent shall pay the funds to plaintiff.