75 N.J. Super. 251 (1962)
183 A.2d 101
EDWARD J. VAN WAGNER, PLAINTIFF-RESPONDENT,
v.
JOHN H.F. ENZ AND CLARA ENZ, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued June 11, 1962.
Decided June 26, 1962.
*252 Before Judges PRICE, SULLIVAN and LEWIS.
Mr. Walter A. Beers argued the cause for appellants.
Mr. Norman J. Abrams argued the cause for respondent (Mr. Walter P. Romer, attorney; Messrs. Abrams, Kestenbaum & Hendricks, of counsel).
*253 The opinion of the court was delivered by SULLIVAN, J.A.D.
Defendants appeal from a judgment in favor of plaintiff for $7,700 plus interest and costs based upon a ruling that plaintiff had earned a real estate broker's commission for which defendants were liable.
On July 3, 1958 plaintiff and defendants entered into a written agreement whereby plaintiff, a real estate broker, was granted the exclusive right to sell certain premises owned by defendants in Somerset County. For his services defendants agreed to pay plaintiff a commission of 10%. The agreement provided that the price for which the property was to be sold was $1,000 an acre "or any other price acceptable" to defendants. The property was described as "Property of Mr. and Mrs. John Enz, Morning Glory Rd., Warren Township. Property of 100 acres more or less, located in Greenbrook Township."
During the term of the listing agreement, as extended, plaintiff interested a Mr. Raymond M. Barrett in the property and, after some negotiations, a form of written agreement dated January 8, 1959 was executed by Barrett as purchaser and defendants as sellers. Said agreement provided that the actual acreage was to be determined by a survey made at the expense of the purchaser, and the purchase price was set at $700 per acre. The agreement also provided "that the seller will further retain approximately 5 acres of land including his own home with the 5 acres to be created to the mutual satisfaction of buyer and seller and the description to be prepared by C.H. Firstbrook * * *." Closing date was designated to be "on or before April 20, 1959."
Said agreement also contained a clause that the seller "hereby agrees to pay to E.J. Van Wagner a commission of 10% on the purchase price aforesaid. Delivery of the deed and payment of the full purchase price in accordance with the terms of this agreement are declared conditions precedent to the obligation of the Seller to pay said commission."
*254 For the sequence of events thereafter we cite the following excerpt from our unreported opinion (A-548-60) in a suit brought by the Enzes to expunge from the record the contract of sale and to have the same declared to be in default, wherein Barrett counterclaimed for specific performance of said contract.
"No closing took place on April 20, 1959, and there were no formal extensions of time. On October 12, 1959 the attorney for the plaintiffs wrote to the attorneys for the defendant giving notice that the contract was terminated because of the defendant's failure to take title. There had been no prior effort to fix a firm date for closing and make time of the essence. Effectiveness of the termination letter was challenged by a reply written the next day. After that, although with considerable slowness, the defendant went on to act as though the contract was still in force. On November 10, 1959 he recorded it. By a letter dated February 26, 1960 he named March 11, 1960 as the date for closing title and declared time to be of the essence. Descriptions to be used in the deed were sent to the plaintiffs with that letter, but the five-acre tract to be retained by them was not provided for in any way.
The plaintiffs did not appear at the appointed place on March 11, 1960 and on March 22nd they filed their complaint in the Chancery Division demanding in effect that the county records be cleared of the contract of sale, that the contract be declared to be in default and that the initial payment ($3,000) made on account of the contract price be fixed as liquidated damages.
The defendant then filed his answer and a counterclaim for specific performance with a demand in the alternative for money damages. When the case was reached for trial it was announced for the plaintiffs that no affirmative relief would be sought because a decision on the counterclaim would of necessity dissipate the cloud on the title created by the recorded contract, that the down payment of $3,000 would be refunded, and that the plaintiffs would defend the counterclaim. The hearing then proceeded as though the defendant had been the original plaintiff. The result was a judgment dated March 10, 1961 which recited the making of the plaintiffs' commitment to refund $3,000, denied specific performance to the defendant and dismissed his counterclaim. From that judgment the defendant has taken this appeal.
The trial judge found as a fact that the five acres to be retained by the plaintiffs from the lands described in the contract of January 8, 1959 had never been defined and held that in the absence of such definition there was nothing before the court which could be performed specifically. We agree with the trial judge's reasoning and with his conclusion. No deed in full conformity with the contract could have *255 been drafted until the five-acre tract was `created to the mutual satisfaction of buyer and seller and the description' prepared by Mr. Firstbrook; and the same comment can be made about a judgment for specific performance which by statute is to have the effect of a deed. N.J.S. 2A:16-7. Definite identification of the land which a vendor has agreed to sell is vital in a suit for specific performance. Alnor Construction Co. v. Herchet, 10 N.J. 246 (1952). In the present case a description of the five acres was necessary to establish what was to be sold, and no one could say where they were or should be. In fact there had been no real attempt to get them located and described."
In the aforementioned suit the judgment of the trial court denying specific performance was affirmed.
At the trial of the instant case the defendants claimed that plaintiff's right to a commission was controlled by the commission clause in the January 8, 1959 agreement. Since that clause made delivery of the deed and payment of the purchase price "conditions precedent" to the obligation of the seller to pay a commission, and since admittedly these events had not taken place, defendants argued that plaintiff had not earned his commission.
The trial judge, sitting without a jury, found that plaintiff was not a party to the agreement of sale dated January 8, 1959, and that the provisions of the commission clause therein were not binding on him. The court found that plaintiff had relied upon the terms of his separate agreement (July 3, 1958) with the defendants. The court held that under said agreement, all that plaintiff had to do to earn his commission was produce a buyer ready, willing and able to purchase. It found as a fact that plaintiff had produced such a buyer and had earned his commission. Judgment was entered accordingly.
On appeal, defendants repeat their contention that the commission clause in the January 8, 1959 agreement controls. It is argued that the July 3, 1958 agreement had expired by its terms; that the pleadings demonstrate that plaintiff brought suit on the January 8, 1959 agreement; and that in any event plaintiff had acquiesced in the commission clause of such agreement.
*256 There is no merit to any of these arguments. The only agreement between plaintiff and defendants was the July 3, 1958 agreement. The trial court found that plaintiff had relied upon the terms of such agreement and that there had been no modification of such terms.
We find, however, that plaintiff did not meet the terms of the July 3, 1958 agreement, and therefore has not earned his commission.
Generally, and in the absence of a special agreement, a broker earns his commission when he secures a buyer ready, willing and able to buy on the terms specified in the written authorization given to the broker, or on other terms duly agreed upon by the seller and buyer. Loeb v. Peter F. Pasbjerg & Co., 22 N.J. 95, 100-101 (1956); Richard v. Falleti, 13 N.J. Super. 534 (App. Div. 1951); Hedden v. Folio, 62 N.J. Super. 470 (App. Div. 1960).
Here the agreement of July 3, 1958 set a selling price of $1,000 an acre, or any other price "acceptable" to the sellers. Had plaintiff produced a buyer ready, willing and able to buy the property for $1,000 an acre, he would have earned his commission without more. However, when he produces a buyer at a price of $700 an acre, he must show that the sellers accepted that price, i.e., entered into a binding and enforceable contract with the buyer at that price. Loeb v. Peter F. Pasbjerg & Co., supra; Geo. H. Beckmann, Inc. v. Charles H. Reid & Sons, Inc., 44 N.J. Super. 159, 170 (App. Div. 1957). Concededly, plaintiff did not produce a buyer at the $1,000 an acre figure. However, it is contended that plaintiff did produce Mr. Barrett with whom the defendants entered into a written agreement for $700 an acre. Therefore, argues plaintiff, he did produce a buyer at a price "acceptable" to defendants.
This conclusion is not well founded. It has been judicially determined that the written agreement at the $700-an-acre figure was not specifically enforceable because there was no definite identification of the five-acre tract to be retained by the sellers. To put it another way, it *257 was found that the parties had not agreed on what land was to be sold. Since there had been no meeting of the minds of the parties as to this important detail, it cannot be said that plaintiff produced a buyer at a price "acceptable" to the sellers.
The price fixed in the January 8, 1959 agreement cannot be separated from the other terms and conditions of said agreement and of itself declared to have been "acceptable" to the sellers. We do not know what considerations prompted the reduction of the selling price by $300 an acre. The provision for retention of the sellers' home, with surrounding five acres (a reservation not contained in the July 3, 1958 agreement), may have been a material factor in the setting of the $700 price. The conclusion is that plaintiff did not produce a buyer either on the sellers' original terms or on other terms "acceptable" to the sellers.
Because of this basic fault in plaintiff's case we find it unnecessary to consider the meaning of the "due and payable" language in the July 3, 1958 agreement.
The judgment in favor of plaintiff is set aside and the matter remanded for entry of judgment for defendants.