In the Matter of PENN CENTRAL TRANSPORTATION COMPANY, Debtor.

In re UNITED NEW JERSEY RAILROAD & CANAL COMPANY, Secondary Debtor.

Petition of PROLERIZED SCHIABO-NEU COMPANY to Reclaim Property and For Other Relief.

No. 70-347.

United States District Court,
E. D. Pennsylvania.

Oct. 25, 1974.

Eugene E. Anderson, Jr., Philadelphia, Pa., for Trustees, Penn Cent. Transp. Co.

Merritt T. Viscardi, Apruzzese & McDermott, Springfield, N. J., for Prolerized Schiabo-Neu Co.

Mitchell L. Bach, Ewing & Cohen, Phildelphia, Pa., for United New Jersey RR & Canal Co.

## MEMORANDUM AND ORDERS
### Nos. 1702 and 42

FULLAM, District Judge.

Petitioner, Prolerized Schiabo-Neu Company ("Prolerized"), seeks to recover $8,500 deposited with the railroads in connection with its agreement to purchase 6.44 acres of land, located in Greenville Yard, New Jersey. The land to be sold under the agreement was, and still is, owned by the Secondary Debtor and leased to the Debtor for a term of 999 years from July 1, 1871. Because Penn Central's management failed to approve the transaction, as required by the terms of the agreement, the property was never conveyed to Prolerized.

The unsettled issues are whether Prolerized is entitled to reclaim its down payment, and, if not, whether its claim against the estates of the railroads is secured by a vendee's lien. The Trustees of the Debtor take the position that Prolerized's claim is an unsecured pre-bankruptcy claim for $8,500, and have verified it as such for purposes of the Debtor's proof of claims program.

On May 13, 1970, Prolerized entered into the sale contract now the basis for its $8,500 claim. In language which reflects the casual disregard for the distinct corporate entities of parent and lessor-subsidiaries that existed before reorganization, the agreement began:

"AGREEMENT.

"The United New Jersey Railroad & Canal Company (hereinafter called Grantor) has agreed through C. Nichols, Manager-Real Estate, Penn Central Transportation Company, Lessee, subject to the approval of the management and Board of Directors of Penn Central Transportation Company and of Grantor (if other than Penn Central Transportation Company) and the Public Utility Commission of the State of New Jersey to sell to [Prolerized] (hereinafter called the Grantee) the land in Grantor's Greenville Yard. . . . "

Other paragraphs of the contract included these terms:

"In the event either management or Board of Directors fails to approve and authorize this transaction . . ., then the sum paid on account will be refunded without interest to Grantee who hereby agrees to accept same, whereupon this writing shall be cancelled and annulled and neither party hereto shall have any claim whatever against the other by reason hereof.

\* \* \* \* \* \*

"Anything herein to the contrary notwithstanding, it is distinctly understood and agreed that this instrument does not constitute a binding agreement or impose any obligation on grantor, Penn Central [Transportation] Company or their agents (except as provided above in reference to the cost of title report, survey and the return of the down payment) unless and until Manager-Real Estate of Penn

Central [Transportation] Company gives written notification to Grantee to the effect that this transaction has received necessary approval and authorization of management and Board of Directors and that Grantor is legally bound."

On behalf of the the grantor, the contract was signed as follows:

"The United New Jersey Railroad & Canal Company.

"by S/ C. Nichols"

As provided in the agreement, Prolerized made a down payment of $8,500 by its check, dated February 13, 1970, payable to the order of UNJ. (According to the Trustees of the Debtor, the payment was made in advance of the agreement of sale "to bind Prolerized's offer for the property.") The check was endorsed to the Debtor and, on March 16, 1970, deposited by the Debtor in its Master Control Account, an account used for payment of general railroad expenses. The $8,500 deposit was commingled with other monies in the account. No funds were set aside from this or any other account for the purpose of making a refund to Prolerized or UNJ, should that contingent obligation arise. On the Debtor's books, this transaction was reflected by a debit to the Debtor's cash account and a credit to its liability account (the credit entry was described initially as an amount owed to UNJ, but later this was changed to show that the amount was owed to Prolerized).

The approval of the management and Board of Directors of Penn Central Transportation Company, necessary for the conveyance, was never given; instead, on June 18, 1970, the Debtor rejected the transaction. Three days later, and before the $8,500 deposit was refunded to Prolerized, the Debtor filed for reorganization under § 77.

About one year later, Prolerized instituted an action against the UNJ in the Superior Court of New Jersey, Chancery Division, Hudson County, seeking return of its $8,500 deposit (plus certain out-of-pocket expenses said to be due the vendee under the sale agreement), a declaration that it held a vendee's lien on the land in Greenville Yard for that amount, and foreclosure of its asserted lien. The Debtor was joined as a third-party defendant. This action has been stayed by the New Jersey State Court to allow Prolerized to seek relief in the Debtor's reorganization proceedings by way of a reclamation petition, which was filed and which is now before this Court.

In the meantime, the UNJ has entered reorganization as a Secondary Debtor (70–347–A), and Order No. 1 in those proceedings barred the further prosecution of any suits against it. Prolerized now asks that, if its reclamation petition is not granted, it be permitted to continue its New Jersey Superior Court action. Both the Debtor and the Secondary Debtor are opposed to this, arguing that since the Debtor's liability to Prolerized is admitted and verified at the full amount claimed, there would be no useful purpose served by reducing the claim to judgment.

First, it is clear that even if Prolerized is granted leave to continue its pending action, that leave would necessarily be limited to prosecution to judgment, and would not permit execution of judgment. And if, after further litigation in the New Jersey Superior Court, it was determined that Prolerized held a vendee's lien, foreclosure still would be enjoined. To allow any other result would afford preferential treatment to Prolerized over other secured and unsecured creditors.

Second, there would be little point in granting Prolerized leave to continue its Superior Court action if the only issue to be litigated were the Debtor's indebtedness to the plaintiff, Prolerized. The existence and amount of the debt is admitted already by the Debtor.

Third, there might be a valid reason (although not advanced by either party) to allow prosecution of the New Jersey action if Prolerized's claim to a vendee's lien raises an unsettled question of

New Jersey property law which would best be decided by the courts of that State. In such a case,

> "Unless the matter is referred to the State courts, upon subsequent decision by the Supreme Court of [the state] it may appear that rights in local property of parties to this proceeding have—by the accident of federal jurisdiction—been determined contrary to the law of the State which in such matters is supreme." Thompson v. Magnolia Petroleum Co., 309 U.S. 478, 60 S.Ct. 628, 84 L.Ed. 876 (1940).

In the instant case, however, the New Jersey decisions cited by the parties make it clear that there is little uncertainty as to what principles of state law govern the disposition of the vendee's lien issue. No more uncertainty attends the adjudication of the parties' property rights here than is present in the decision of most legal questions. "To refer to the state court every land question arising in bankruptcy would be to disregard the very objectives of the summary jurisdiction granted to the bankruptcy court." In re Chicago & Northwestern Ry. Co., 127 F.2d 1001, 1004 (7th Cir. 1942); *see, also,* In re J. Rosen & Sons, Inc., 130 F.2d 81 (3d Cir. 1942).

■ There is some doubt that a vendee's lien ever existed in this case, given the fact that the sale contract was not specifically enforceable, absent the approval of the management and Board of Directors of Penn Central. In doctrinal terms, a vendee's lien is a property interest based on the theory of equitable conversion, and a sale agreement will not work an equitable conversion unless it is binding and specifically enforceable. However, the leading New Jersey case on the subject of vendee's lien contains *dicta*[1] which clouds the issue, Reilly v. Griffith, 141 N.J.Eq. 154, 56 A.2d 502 (1947), aff'd mem., 142 N.J.Eq. 724, 61

A.2d 235 (1948), and the holding of an earlier case squarely conflicts with the principles just stated. Stuart & Wood, Inc. v. Palisades, etc. Corp., 109 N.J.Eq. 401, 157 A. 659 (1931).

■ But assuming for the moment that, by virtue of the sale contract, Prolerized did hold an equitable lien, it appears that the contract was never recorded. It follows, inescapably, that the equitable interest created thereby was cut off by the filing for reorganization under § 77. *See, e. g.,* In re Sayre Village Manor, Inc., 120 F.Supp. 215 (D.N.J.1954); United States v. 13,255.53 Acres of Land, 55 F.Supp. 334 (D.N.J. 1944). Hence, the asserted lien is not valid against the Trustees of the UNJ or PCTC.

■ Nor is Prolerized entitled to reclaim its down payment. The terms of the sale agreement in no way restrict the recipient's use of the $8,500, and nothing else suggests that the parties intended that the funds should be segregated rather than commingled with the recipient's own monies. That is, no express trust was created by the sale transaction.

■ It is equally clear that no basis exists for a constructive trust. The fact that Penn Central did not refund the deposit to Prolerized before filing for reorganization, only three days after rejecting the sale transaction, does not itself suggest fraudulent conduct sufficient to impress a trust *ex maleficio* upon the Debtor's funds.

From the provisions of the sale agreement set forth above, it appears that there may have been confusion as to the identify of the "grantor" and the ultimate recipient of the sale proceeds. (Actually, if Prolerized was to receive a fee interest—and this seems to have been the plain intention of all the parties—both UNJ and Penn Central would have been

---

1. In its discussion of vendee's liens, the Court quoted with approval from Fry, Specific Performance, 672 § 1480: "On the same principle the purchaser has a lien for his deposit, not only when the contract goes off for want of title, but also when it is rescinded under a condition entitling the purchaser, or the vendor, to rescind." 141 N.J.Eq. at 164, 56 A.2d at 509.

necessary signatories to the agreement; and both presumably would have an interest in the sale proceeds, although UNJ's reversionary interest might be infinitesimal.) There is no merit to Prolerized's argument that this confusion amounted to fraud or mutual mistake which gives rise to a constructive trust. The confusion, apparent from the face of the contract, placed on Prolerized the duty of further inquiry. Had it so inquired, the relationship of UNJ and Penn Central would have been made clear.

■ Finally, Prolerized argues that Penn Central never acquired title to the $8,500 deposit, but was acting as UNJ's agent. But whether Penn Central was acting as principal or as agent for UNJ when it received the funds, title passed from Prolerized to one of the railroad parties. That is, Penn Central certainly was not Prolerized's agent. For all these reasons, Prolerized's reclamation petition will be denied.

It is appropriate to make the following observations, lest it be thought that Prolerized was prejudiced by the fact that while its reclamation petition was pending before this Court (and while, as a result, the New Jersey action was stayed), UNJ went into reorganization. First, Prolerized never sought to comply with Order No. 170 (70–347), which restrains creditors of lessor railroads from suing to enforce claims against the lessors, except after filing with this Court and serving on all interested parties 14 days' notice of intention to proceed. I am satisfied that the New Jersey action could have been enjoined until Prolerized complied with that Order.

Second, and more importantly, to the extent that Prolerized's New Jersey suit sought to foreclose on its asserted lien against UNJ's property, that litigation could and should have been enjoined by Order No. 1 in the Penn Central proceedings. It is plain that such an action would have threatened to disturb Penn Central's possession of the property, in violation of Order No. 1.