**In the Matter of Charles R. PEARL, Debtor.**

**and**

**In re SHORE SITES, INC., Debtor.**

**Charles J. BENNEMAN, Jr. and Bertha H. Benneman, Plaintiffs,**

**v.**

**Charles R. PEARL, Shore Sites, Inc., Pearl Builders, Inc., and Richard Kinnear, Receiver.**

**Bankruptcy Nos. B–74–1480, B–74–1481. Adv. No. 83–0023–TS.**

United States Bankruptcy Court, D. New Jersey.

June 25, 1984.

Teich, Groh, Robinson, Kline & Frost by Gloria M. Burns, Trenton, N.J., for plaintiffs.

Kinnear & Rossi by Richard Kinnear, Manasquan, N.J., for receiver.

Markowitz & Zindler by Michael A. Zindler, Lawrenceville, N.J., for debtors.

## OPINION

AMEL STARK, Bankruptcy Judge.

*Facts and Procedural History*

1. Debtors, Charles R. Pearl, individually, and Shore Sites, Inc., a corporation of the State of New Jersey, both filed Petitions under Chapter XI of the Bankruptcy Act on September 19, 1974.

2. Richard T. Kinnear, Esquire, was appointed as receiver in both matters, duly qualified, and is acting as Attorney Pro Se in both matters.

3. Debtor, Charles R. Pearl, is a real estate broker and developer, whose principal interest was his stock ownership in the Debtor, Shore Sites, Inc.

4. Debtor, Shore Sites, Inc., is the owner of a large tract of land, partially developed, located in the Township of Lacey, Ocean County, New Jersey, which had been partially improved by construction of water

---

**6.** 28 U.S.C. § 89(c), 1983 Bankruptcy Rule 1014(a)(2).

lagoons, residences and a beach-club area for its residences. It was still the owner of a large portion of the original tract at the time of filing of the proceedings.

5. At the time of filing of the proceedings by both Debtors, because of various mortgages, judgment liens and statutory liens, the Debtor, Shore Sites, Inc., was unable to convey any of its assets, and was threatened with execution sales which would have completely extinguished its only asset.

6. Plaintiffs in this complaint purchased real property from the Debtors, Shore Sites, Inc., two years prior to the filing by Debtor of a Petition for Arrangement under Chapter XI of the Bankruptcy Act, but failed to record their agreement of sale. Plaintiff Purchasers contend that they are entitled to a constructive trust or an equitable lien upon such property with priority over the Receiver; the Receiver disputes this claim, and argues that such an interest is avoidable by the Receiver, wielding the strong-arm powers of Section 70c of the Bankruptcy Act, in effect at the time of the filing of the proceedings, the Bankruptcy Act governing all phases of these proceedings.

7. On or about November 14, 1972, Charles and Bertha Benneman ("the Purchasers") entered into an agreement with Shore Sites, Inc. ("the Debtor") to purchase real property located in Forked River Beach, Lacey Township, Ocean County, New Jersey, the real estate development of the Debtor. The agreement required the Debtor to convey marketable title as well as actual possession of the property to the Purchasers on December 14, 1972, the day of settlement, and acknowledged prior payment of the entire purchase price of $6,000. Although the agreement was in writing and acknowledged by both Purchasers and by Charles R. Pearl, as President of the Debtor, and Elizabeth R. Wolcott, as Secretary of the Debtor, the Purchasers did not record the agreement in the Office of the Clerk of Ocean County, so as to effect an actual lien or claim to title to such real property as against subsequent purchasers.

8. Charles Pearl subsequently advised the Purchasers that the corporation could not convey marketable title, due to numerous liens and encumbrances against not only the subject property, but the entire tract of land, the only asset of the Corporation.

9. Two years later, on September 19, 1974, Charles Pearl and Shore Sites, Inc. each filed Petitions for Arrangement under Chapter XI of the Bankruptcy Act. The matters were consolidated for administrative purposes on February 4, 1975.

10. On December 22, 1982, a judgment was entered by this Court, *inter alia,* conveying the subject property from the Receiver and the Debtor to Pearl Builders, Inc., a corporation. The Purchasers were not made a party to this action, since the alleged lien or claim of title did not appear of record.

11. On January 6, 1983, Purchaser-Plaintiffs filed this complaint, seeking a Judgment (1) setting aside the sale of the subject real estate to Pearl Builders, Inc. and (2) Ordering the Receiver and the Debtor to convey the real property to Plaintiffs, free and clear of all outstanding claims, liens and encumbrances in accordance with the agreement of sale. Prior to the filing of this complaint, the Purchasers had made no attempt to assert a claim to or interest in the subject real property. The complaint named Charles Pearl, Shore Sites, Inc., Pearl Builders, Inc., and the Receiver as defendants.

*Discussion*

This complaint raises two separate issues: (1) were the Purchasers entitled to a constructive trust or an equitable lien upon the subject property as against the Debtor, and (2) if there were such a constructive trust or equitable lien, would it be superior to the Receiver's power, under section 70c of the Bankruptcy Act, to avoid any lien which is voidable by a judgment creditor holding an execution duly levied upon on the date of the petition.

## A. Pre-petition Equitable Lien

The Purchasers argue that "[i]n general, a constructive trust arises where a person holding title to property is under an equitable duty to convey it to another because he would be unjustly enriched if he were permitted to retain it." *Moses v. Moses*, 140 N.J.Eq. 575, 580, 53 A.2d 805 (Ch. 1947). In support of this argument the Purchasers cite a number of cases involving rather inapposite factual situations. *See Stretch v. Watson*, 5 N.J. 268, 74 A.2d 597 (1950) (breach of express trust); *D'Ippolito v. Castoro*, 51 N.J. 584, 588, 242 A.2d 617 (1968) (when guarantor lost house to co-guarantor as a result of co-guarantor's breach of duty to guarantor, constructive trust imposed); *Callahan v. Callahan*, 142 N.J.Super. 325, 361 A.2d 561 (Ch.Div.1976) (constructive trust imposed on stock options to effect distribution of property where actual transfer of stock options not feasible); *Clark v. Judge*, 84 N.J.Super. 35, 61, 200 A.2d 801 (Ch.Div.1964), *aff'd* 44 N.J. 550, 210 A.2d 415 (1965) (oil royalty interests wrongfully transferred from trust to trustees held subject to constructive trust).

On the basis of the well-known right of a vendee to an equitable lien on the real property purchased, the Purchasers clearly were entitled to an equitable lien on the subject property upon payment of the purchase price. As explained in *Mihranian, Inc. v. Padula*, 134 N.J.Super. 557, 563–64, 342 A.2d 523 (App.Div.1975), *aff'd per curiam*, 70 N.J. 252, 359 A.2d 473 (1976) (emphasis added):

The vendee's lien is of ancient origin and it has been recognized and enforced in this State since at least 1830. *Copper v. Wells*, 1 *N.J.Eq.* 10 (Ch.1830); see *Reilly v. Griffith*, 141 *N.J.Eq.* 154, 165 [56 A.2d 502] (Ch.1947), aff'd 142 *N.J.Eq.* 724 [61 A.2d 235] (E. & A. 1948). It is frequently referred to as the counterpart to the vendor's lien and, although courts elsewhere are not in entire accord as to the sources and reasons for its existence, it is enforced in most other jurisdictions in this country. As stated in 10A *Thompson on Real Property* § 5271 at 572 (1957):

Whether the foundation of this lien is natural equity, imputed intention, partial ownership, the implication of a trust, or a blending of some of these sources, the authorities, almost without exception in those jurisdictions which give a lien to the vendor, are clear that one exists.

Our courts, in affirming the existence and validity of vendees' liens, generally refer to the maxim that equity regards as done that which ought to be done, to the doctrine of equitable conversion which is firmly entrenched in our jurisprudence, and to the trust relationship which arises between the parties upon the execution of a contract of sale of realty. When such contract is entered into, in the eyes of equity the contract is regarded for most purposes as though specifically executed and the original estate of each of the parties is regarded as "converted". *The vendee becomes the equitable owner of the land and the vendor of the purchase money, and the vendor is considered the trustee of his estate in the land for the vendee. When the vendee pays a portion of the purchase money, the vendor becomes a trustee for him and the vendee acquires a lien just as if the vendor had executed a mortgage to him of his estate to the extent of the payment received.*

Mihranian held that the purchaser was entitled to an equitable lien, although the vendor had not acquired equitable ownership of the property until one week after the agreement of sale; the rights of a subsequent purchaser were held inferior to the rights of the original purchaser by virtue of a lis pendens filed prior to the second sale. *See also In re Mayfair Construction Co., Inc.*, 170 F.Supp. 657 (D.N.J. 1959).

The Receiver and Debtor argue, however, that at this late date the Purchasers are barred by laches and equitable estoppel from enforcing their rights against the property, by virtue of their failure to take any action against the property for over ten years after the Debtor's breach of contract. "Generally, laches consists of an unexplained and inexcusable delay in en-

forcing a known right *whereby prejudice has resulted to the other party* because of such delay." *Clark v. Judge, supra,* 84 N.J.Super. at 53, 200 A.2d 801 (Ch.Div. 1964), *aff'd* 44 N.J. 550, 210 A.2d 415 (1965) (emphasis added). The Debtor has failed to establish any prejudice to itself as a result of the Purchasers' inaction, and the Court therefore holds that, *as against the Debtor,* the Purchasers would hold an equitable lien on the property. Since the Debtor would be unable to convey marketable title to the property, the Purchasers alternatively would be entitled to a claim in damages against the Debtor.

A separate question which must be addressed is whether the equitable lien of the Purchasers may be eliminated by the avoiding powers of the Receiver under section 70c of the Bankruptcy Act.

### B. *Receiver's Strong-Arm Powers*

Congress long ago determined that certain rights belonging to creditors could be avoided or diminished in bankruptcy in the interest of increasing the equitable distribution of unencumbered assets to general creditors and, in cases of reorganization, according the debtor the maximum amount of property with which to effect a reorganization. *See* 4B *Collier on Bankruptcy* § 70.47 at 566–69 (14th ed. 1978). The bankruptcy laws clearly recognize, however, the validity and desirability of security interests, as well as the constitutional requirement that secured creditors not be deprived of a substantial interest in the debtor's property without just compensation. *See United States v. Security Industrial Bank,* 459 U.S. 70, 103 S.Ct. 407, 411, 74 L.Ed.2d 235, 241 (1982); *Louisville Joint Stock Land Bank v. Radford,* 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593 (1935). A debtor's ability to legally bind itself, and particularly its property, to payment of debts is sometimes of key importance in permitting the debtor to obtain financing in the first place. In cases in which a secured creditor has taken insufficient action to perfect its security interest or to otherwise protect itself from competing creditors, however, Congress has determined that such a creditor's property interest is so precarious and ephemeral that it may fairly be deprived of that interest without objection on either economic or constitutional grounds.

The primary means by which this policy is effected is the so-called "strong-arm clause," section 70c of the Bankruptcy Act, which has been replaced by section 544(a) of the Bankruptcy Code. (The present case, which was commenced under the Bankruptcy Act in 1974, continues to be governed by that Act pursuant to the savings provision of section 403(a) of the Bankruptcy Reform Act of 1978.) The strong-arm powers of the trustee have been steadily augmented over the years, most recently by the addition of the rights of a bona fide purchaser of real property in section 544(a) of the Bankruptcy Code. *See also* amendments of 1950, 1952 and 1966, 64 Stat. 23 (1950); 66 Stat. 430 (1952); 80 Stat. 268 (1966); *In re Blease,* 605 F.2d 97, 99 n. 3 (3d Cir.1979).

Section 70c provided:

"The trustee shall have as of the date of bankruptcy the rights and powers of: (1) a creditor who obtained a judgment against the bankrupt upon the date of bankruptcy, whether or not such a creditor exists, (2) a creditor who upon the date of bankruptcy obtained an execution returned unsatisfied against the bankrupt, whether or not such a creditor exists, and (3) a creditor who upon the date of bankruptcy obtained a lien by legal or equitable proceedings upon all property, whether or not coming into possession or control of the court, upon which a creditor of the bankrupt upon a simple contract could have obtained such a lien whether or not such a creditor exists." Bankruptcy Act § 70c.

The question in this proceeding, therefore, is whether, under law of New Jersey, a judgment creditor holding an execution duly returned unsatisfied on the date of bankruptcy could have prevailed over the interest of the Purchasers in the subject property. The critical fact with regard to this question is that the Purchasers failed to record their agreement of sale although

it would have been recordable under N.J.S.A. § 46:16–1 (West Supp.1983), which provides that "agreements for the sale of real estate" may be "acknowledged or proved and then recorded in the office of the county recording officer of the county wherein the real estate is siutate." The Purchasers have offered no reason why the agreement of sale could not have been recorded, nor even explained their failure to do so.

The recording act in New Jersey states:

Every deed or instrument of the nature or description set forth in section 46:16–1 of this title *shall, until duly recorded* or lodged for record in the office of the county recording officer in which the affected real estate or other property is situate, *be void and of no effect against subsequent judgment creditors without notice,* and against all subsequent bona fide purchasers and mortgagees for valuable consideration, not having notice thereof, whose deed shall have been first duly recorded or whose mortgage shall have been first duly recorded or registered; but any such deed or instrument shall be valid and operative, although not recorded, except as against such subsequent judgment creditors, purchasers and mortgagees.

N.J.S.A. § 46:22–1 (West 1940) (emphasis added).

The purpose of the recording act is to protect purchasers and encumbrancers of real property against undisclosed liens thereon. *In re E.L. "Bud" Reeves, Inc.,* Bankruptcy No. B–77–1557 at 5 (Bankr.D.N.J., Dec. 26, 1980) (Hill, J.) (unpubl.op.). "Generally speaking, and absent any unusual equity, a court should decide a question of title such as this in the way that will best support and maintain the integrity of the recording system." *Palamarg Realty Co. v. Rehac,* 80 N.J. 446, 453, 404 A.2d 21 (1979).

The recording act would appear on its face to grant a judgment creditor priority over a prior purchaser who failed to record its agreement of sale, as did the Purchasers in this case. They argue, however, that certain equitable interests will be excepted from coverage of the recording act in the

interest of equity. Indeed, this is so, as stated in *Rutherford Natl. Bank v. H.R. Bogle & Co.,* 114 N.J.Eq. 571, 578, 169 A. 180 (Ch.1933):

"The general lien of a judgment creditor upon his debtor's lands is subject to all such equities as existed against them in favor of third persons when such judgment was recovered, and a court of equity will so control the legal lien of such judgment as to restrict and limit it merely to the actual interest of the judgment debtor in the property, so as to fully protect and preserve the rights of persons having prior equitable liens or interests in such property. This principle is founded upon the equitable doctrine that a judgment and the legal lien of its docket bind only the actual interest of the judgment debtor and is subject to all outstanding equities which are valid as against such debtor."

*See* 29 New Jersey Practice, Cunningham and Tischler, *Law of Mortgages* § 104 at 402 (1975).

The Purchasers rely most heavily on *In re E.L. "Bud" Reeves, Inc., supra,* in which the plaintiff had conveyed title to real property to the debtor as security for the construction of a house by the debtor, with the intention that title would be reconveyed to the plaintiff upon completion of construction and payment. By mutual mistake, the property was never reconveyed. The Hon. Richard W. Hill, Bankruptcy Judge, District of New Jersey, determined that the plaintiff's constructive trust in the property was superior to the trustee's strong-arm powers. The essential fact in that case and in the three cases upon which Bankruptcy Judge Hill relied, however, was that "the equitable rights in question were not incorporated in or evidenced by recordable instruments." *Id.* at 6. "Even today, it would seem that prior legal and equitable interests *not created by a recordable instrument* —i.e., arising by implication, prescription, or operation of law—are valid as against subsequent judgment creditors without notice." 29 New Jersey Practice, Cunningham & Tischler,

*Law of Mortgages* § 104 at 402 (1975) (emphasis added).

 The Purchasers have sought to bring themselves within this doctrine by attempting to portray themselves as victims of an unusual situation, deserving of equity. In fact, however, these Purchasers are precisely the type of interest-holder at whom the recording provision of the New Jersey Statute was directed. Because they had possession of a written, recordable instrument, but failed to record it in the two years between signing of the agreement and filing of the Debtor's petition, their interest in the property was avoidable by a creditor obtaining a judgment upon the date of bankruptcy, and may therefore be avoided by the Receiver in this case.

This ruling admittedly may sometimes have a rather anomalous result. The purchaser who is completely careless and fails even to obtain a writing as evidence of the agreement of sale might be able to overcome the recording act, whereas a purchaser who is careful enough to obtain written evidence but fails to record the instrument will be defeated by a judgment creditor.* Such a rule is necessary, however, if the system for recording of title to real estate is to substantially serve its purpose: a party claiming an interest in real estate who has possession of a document which evidences that interest must record it in order to retain priority over subsequent judgment creditors, mortgagees and bona fide purchasers. The unusual party who has no written evidence of his claim to real estate must be dealt with on a separate basis.

*Conclusion*

For the reasons discussed, the Purchasers will be denied the relief sought and this Court's judgment allowing the conveyance of the subject property from the Receiver and Debtor to Pearl Builders, Inc. will not be set aside. The Plaintiffs, if they have not already done so, will be permitted to file a general claim in the sum of $6,000.00 within thirty days of entry of Order pursuant to this opinion. The Debtor should submit an order consistent with this opinion.

---

\* Such an anomalous result would ordinarily be impossible because of the requirement of writing in the Statute of Frauds, N.J.S.A. § 25:1–5 (West 1940), *United States v. 13,255.53 Acres of Land,* 55 F.Supp. 334 (D.N.J.1944); *but see Klockner v. Green,* 54 N.J. 230, 254 A.2d 782 (1969) (part performance).