218 N.J. Super. 565 (1987)
528 A.2d 101
MICHAEL B. COHEN AND LINDA E. COHEN, PLAINTIFFS,
v.
ESTATE OF JEAN R. SHERIDAN, GERALD LIZOTTE, JEAN S. LIZOTTE, JERSEY SHORE REAL ESTATE AND BARRY ASSOCIATES, DEFENDANTS.
Superior Court of New Jersey, Chancery Division Monmouth County.
Decided May 27, 1987.
*566 Gary E. Fox for defendants Jersey Shore Real Estate and Barry Associates (Ansell, Fox, Zaro & McGovern, attorneys).
Jeffrey Resnikoff for plaintiffs (Resnikoff & Resnikoff, attorneys).
Peter S. Falvo, Jr. for defendants Estate of Jean R. Sheridan, Gerald Lizotte and Jean S. Lizotte (Falvo, Bonello, Moriarty & Steiger, attorneys).
McGANN, J.S.C.
This opinion  delivered orally on the return date of plaintiffs' order to show cause and on defendants' motion for summary judgment  is reduced to writing at the request of counsel because the subject matter is of general interest.
The issue involved is rather simple, occurs commonly, but, so far as research has been able to determine, has not been ruled on, definitively, in New Jersey. It is this. Does the broker whose efforts lead to the signing of a contract for the sale of *567 real estate have a lien for his commission on the proceeds of sale due to the seller at closing? The answer is, yes.
On July 22, 1986, Jean Sheridan[1], Gerald Lizotte and Jean S. Lizotte, his wife, signed an "Exclusive Right to Sell Agreement" with the Monmouth County Board of Realtors' multiple listing service through a "listing broker," defendant, Barry Associates. That agreement provided that the owners would pay a commission of 6% of the sales price.
On November 3, 1986 the owners-defendants signed a written contract to sell the property to the plaintiffs-Cohen. That contract, on a standard realtors' printed form, provided for a sales price of $290,000 with a total commission of 6% of which 3% was to go to Jersey Shore Real Estate Associates, the "selling broker," a member of the multiple listing service. The closing date was scheduled for May 16, 1987. As provided in the contract, the required deposit of $25,000 was paid by the purchasers and held in the trust account of Jersey Shore Real Estate Associates. In all of its other terms, the contract was quite ordinary and in full compliance with the Statute of Frauds.
The title search ordered by the attorneys for the purchasers revealed a substantial first mortgage lien on the property as well as a number of judgment liens. The estimated closing costs to clear all liens (including taxes) as well as to pay the real estate commission of $17,400 came to $302,252. It was quite apparent that the sellers had no independent funds to make up the difference between that figure and the purchase price of $290,000.
In anticipation of that problem, the purchasers filed this action on April 16, 1987 seeking specific performance of the contract and, in connection therewith, a declaration that the real estate commission due was not a lien on the property which had *568 to be satisfied at closing in order that they receive clear title. Process was by way of an order to show cause seeking declaratory relief on its return day. All parties were promptly served. Both realtors (listing and selling), represented by the same attorney, filed their answers and a motion for summary judgment returnable on the same day as the order to show cause. By that motion they sought a declaration that the commission was a lien on the property and on the closing proceeds. The purchasers and realtors fully briefed their respective positions. The sellers took no position.
If the plaintiffs prevail, the court will order Jersey Shore to turn the $25,000 deposit over to the seller's attorney (to be used to pay off liens) and, to the extent that there are insufficient funds at the closing to pay the $17,400 commission, the brokers will be left to an action at law against the sellers for the balance. In doing so they will necessarily incur the added expense and delay attendant to that litigation, and run the practical risk (as noted above) that the sellers are "judgment proof."
There is no contention, here, that the brokers have not earned the commission. Under existing law, upon performance of the contract by the buyer, the owner/seller becomes liable for the payment of the real estate commission. Ellsworth Dobbs, Inc. v. Johnson, 50 N.J. 528, 551 (1967). The buyers in this case are ready, willing and able to specifically perform.
Ellsworth Dobbs was a landmark case in which our Supreme Court undertook a comprehensive review concerning the nature of the relationship between real estate brokers and sellers. The Court rejected the notion that a broker became legally entitled to a commission upon the signing of a contract between buyer and seller but ruled instead, that it was earned only when the buyer consummated the contract. As the Court stated:
It seems to us that fairness requires that the arrangement between broker and owner be interpreted to mean that the owner hires the broker with the expectation of becoming liable for a commission only in the event a sale of the *569 property is consummated, unless the title does not pass because of the owner's improper or frustrating conduct. [Id. at 548]
A practical reason underlying that conclusion is, as set forth in the opinion, this fact:
There can be no doubt that ordinarily when an owner of property lists it with a broker for sale, his expectation is that the money for the payment of commission will come out of the proceeds of the sale. [Id. at 547]
In that regard the Court cited with approval the words of Lord Denning in Dennis Reed, Ltd. v. Goody, [1950] 2 K.B. 277, 1 All Eng.Rep. (1950) 919:
No particular words are needed to create the relationship [of owner and broker]. All the familiar expressions "please find a purchaser," "find someone to buy my house," "sell my house for me," and so on, mean the same thing: they mean that the agent is employed on the usual terms; but none of them give any precise guide as to what is the event on which the agent is to be paid. The common understanding of men is, however, that the agent's commission is payable out of the purchase price.... [2 K.B. at 284-285, 1 All Eng.Rep. at 923]
The Court's conclusion from the foregoing is stated in the following fashion:
What must be regarded as the fundamental intendment of the parties, owner and broker, i.e., that the owner will sell and the buyer will pay, and the broker will thus earn his commission out of the proceeds, cannot be ignored in this connection. [50 N.J. at 552]
See also Van Winkle & Liggett v. G.B.R. Fabrics, Inc., 103 N.J. 335, 343 (1986).
If plaintiffs are correct in arguing that the commission is not a lien on the property then the following anomalous result will occur: the mortgage and judgment creditors will be fully satisfied; the sellers will be freed of their responsibility to pay those debts and the party who made that possible by bringing buyer and seller together in a signed, binding agreement will receive nothing  except a future lawsuit with clear legal, but with risky monetary, probability of success. If not unjustly "enriched" in that process, the sellers will certainly have been unjustly "benefited" through the unrewarded efforts of the brokers. That result strikes one's conscience as inequitable.
*570 To prevent an inequitable result, resort to the concept of imposing an equitable lien seems fitting.
The nature and purpose of an equitable lien was set forth in detail by Justice Proctor in In Re Hoffman, 63 N.J. 69 (1973):
An equitable lien "may be created by express executory contracts relating to specific property then existing, or property to be afterward acquired; and sometimes they are raised ex aequo et bono, according to the dictates of equity and conscience. .. . [citations omitted] Such a lien is a right of a special nature in a fund and constitutes a charge or encumbrance upon the fund. See 4 Pomeroy, Equity Jurisprudence (5th Ed. 1941) § 1233, p. 692; 51 Am.Jur.2d, Liens, § 22, p. 160. Where one promises to pay for services rendered out of a fund created in whole or in part by the efforts of the promisee, a lien in favor of the promisee will attach to the fund when it comes into existence. [at 77; citations omitted]
He quoted with approval from Rutherford National Bank v. H.R. Bogle Co., 114 N.J. Eq. 571 (Ch. 1933):
The whole doctrine of equitable liens or mortgages is founded upon that cardinal maxim of equity which regards as done that which has been agreed to be, and ought to have been, done.
....
The form which an agreement shall take in order to create an equitable lien or mortgage is quite immaterial, for equity looks at the final intent and purpose rather than at the form. [at 573]
The brokers here are in a position, as was the accountant in In Re Hoffman, to seek the protection of a court of equity in securing the payment of their fee.
On analysis, the inchoate right of a broker to a commission to be paid at closing is entitled to the protection of an equitable lien on the property of the seller until closing (to protect against any unscrupulous activity on the part of the seller  Ellsworth Dobbs, above, 50 N.J. at 548) and, at closing, to an equitable lien on the fund due to the seller.
Not necessary for this decision is a determination of the priority of that equitable lien with regard to other liens on the property. The parties did not seek that item of relief.
NOTES
[1] Jean Sheridan died in March 1987. Her death is not, however, a complicating factor.