## In re L.D. PATELLA CONSTRUCTION CORP., Debtor.

### Bankruptcy No. 89–05829.

United States Bankruptcy Court, D. New Jersey.

May 7, 1990.

54

Barry J. Wendt, Audubon, N.J., for Weichert Realtors.

Arthur H. Miller, Miller & Littman, P.A., New Brunswick, N.J., for debtor.

## MEMORANDUM OPINION

STEPHEN A. STRIPP, Bankruptcy Judge.

This matter is before the Court on motion by Weichert Realtors (hereinafter "Weichert"), a real estate brokerage firm, for an order authorizing L.D. Patella Construction Corp., the debtor in possession in this chapter 11 case (hereinafter "debtor"), to retain Weichert nunc pro tunc, and for payment of a commission on the sale of certain real property owned by the debtor. The debtor opposes the motion.

The Court has jurisdiction under 28 U.S.C. §§ 1334 and 157(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), (K) and (O). This opinion shall constitute the Court's findings of fact and conclusions of law.

### I.

The debtor is in the business of house construction. At all relevant times the debtor owned real property known as 3 Miller Farm Road, Somerset, New Jersey.

On January 25, 1989 the debtor and Weichert entered into a listing agreement for the sale of the subject property.[1] On April 26, 1989 the debtor signed a contract to sell the property to Pramod and Tara Kanetkar for $450,000. The Kanetkars were introduced to the debtor by Weichert. By letter agreement dated April 21, 1989 the debtor and Weichert agreed that if the sale to the Kanetkars closes, Weichert shall receive a commission of 3½% of the sale price at the time of closing.

The debtor filed a petition for relief under chapter 7 of the Bankruptcy Code on July 24, 1989. On the debtor's motion, the case was converted to chapter 11 on November 20, 1989 for the purpose of completing and selling various houses, including the Kanetkars', which were under construction when the petition was filed. No notice of sale or motion for an order authorizing sale of the subject property has since been filed. However, the Kanetkars apparently still wish to proceed. The Court has been informed that negotiations are under way regarding completion of the house and closing.

### II.

Weichert's motion for an order authorizing the debtor to retain it nunc pro tunc is opposed by the debtor, which asserts that no further services are required of Weichert. The primary thrust of Weichert's argument is that it has met the standards for nunc pro tunc retention enunciated in *In re Arkansas Co., Inc.*, 798 F.2d 645 (3rd Cir.1986) and *F/S Airlease II, Inc. v. Simon*, 844 F.2d 99 (3rd Cir.) *cert. denied* 488 U.S. 852, 109 S.Ct. 137, 102 L.Ed.2d 110 (1988).

*Ellsworth Dobbs, Inc. v. Johnson*, 50 N.J. 528, 551, 236 A.2d 843, 855 (1967), holds as follows:

When a broker is engaged by an owner of property to find a purchaser for it, the

---

1. No copy of the listing agreement was provided with the moving papers. However, the debtor does not dispute that there is a listing agreement, that it provides for the sale by Weichert of the property, and that but for the debtor's bankruptcy, Weichert would be entitled to the commission which it seeks upon closing of the subject sale. No other terms of the listing agreement are relevant to this motion.

broker earns his commission when (a) he produces a purchaser ready, willing and able to buy on the terms fixed by the owner, (b) the purchaser enters into a binding contract with the owner to do so, and (c) the purchaser completes the transaction by closing the title in accordance with the provisions of the contract. When a broker produces a purchaser who signs a contract with an owner to purchase property, the broker's obligation to the owner under their agreement has been fulfilled. Although brokers often render services between contract and closing in various ways, such services are gratuitous. Since the contract between the debtor and the Kanetkars was signed before the debtor's bankruptcy petition was filed, the debtor's argument that no postpetition services are required of Weichert is correct. There is therefore no need for the debtor to retain Weichert in the bankruptcy case.

Weichert's argument also overlooks another basic problem. Code § 327(a) provides that with certain exceptions not pertinent here, "the *trustee* [or debtor in possession under Code § 1107], with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons...." [emphasis added]. Bankruptcy Rule 2014(a) further provides as follows:

> Rule 2014. Employment of Professional Persons.
>
> (a) Application for and Order of Employment. An order approving the employment of attorneys, accountants, appraisers, auctioneers, agents, or other professionals pursuant to § 327 or § 1103 of the Code shall be made *only on application of the trustee or committee*, stating the specific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, or any other party in inter-

est, their respective attorneys and accountants. The application shall be accompanied by a verified statement of the person to be employed setting forth the person's connections with the debtor, creditors, or any other party in interest, their respective attorneys and accountants. [emphasis added]

■ The requirements in Rule 2014(a) regarding the contents of an application for retention indicate the concerns which must be satisfied before retention will be authorized. Essentially, it must be demonstrated that the professional's services are necessary; that the proposed compensation is reasonable; and that there are no conflicts of interest. The requirement that an order approving retention shall be made only on application of the trustee, debtor in possession or creditors committee underscores the role of those fiduciaries in seeing to it that the concerns expressed in Rule 2014(a) and in the Code regarding retention of professionals are satisfied. The argument that a professional can compel a fiduciary to retain him over the objection of the fiduciary ignores the fact that only the fiduciary can make the application, and ignores the concerns underlying that requirement.[2]

Since the services required of Weichert were completed before the bankruptcy petition was filed, and since the motion for nunc pro tunc retention is opposed by the debtor, the motion must be denied.

### III.

■ At the initial hearing on this motion on November 13, 1989 the Court raised the question as to whether the debtor can assume the contract of sale with the Kanetkars without paying Weichert's commission, since the contract of sale notes the debtor's obligation to pay Weichert a commission upon closing, and provides that Weichert shall have a lien against the premises until the commission is paid. If the contract of sale is an executory contract, it cannot be assumed in part and

---

**2.** There may be cases in which a fiduciary's conduct with respect to a professional estops or otherwise bars the fiduciary from denying that he or she has consented to retention of the professional. This is not such a case.

rejected in part; it must be assumed or rejected completely. *In re Kennesaw Dairy Queen Brazier*, 28 B.R. 535 (Bkrtcy. N.D.Ga.1983). Thus if the agreement to pay Weichert is part of the contract of sale, the debtor could not assume the contract of sale without agreeing to pay Weichert.

■ An executory contract is generally defined as one "under which the obligations of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing performance of the other." Countryman, *Executory Contracts in Bankruptcy, Part I*, 57 Minn.L. Rev. 439, 460 (1973). It has been suggested as an alternative that "every contract which requires substantial performance by either party to the agreement other than the payment of money is potentially executory in the bankruptcy context." *In re Norquist*, 43 B.R. 224, 228 (Bkrtcy.E.D. Wash.1984). Under either definition, it is clear that the contract of sale in this case is an executory contract.[3]

■ The issue of divisibility of contracts is a matter of state law. *In re T & H Diner, Inc.*, 108 B.R. 448, 453 (D.N.J. 1989). In New Jersey the issue is primarily determined by the intention of the parties. *Id.* However, the fact that transactions are set forth in one instrument does not necessarily mean that there is only one contract. *In re Gardinier, Inc.*, 831 F.2d 974, 976 (11th Cir.1987), *cert. denied sub nom. Byrd v. Gardinier, Inc.*, 488 U.S. 853, 109 S.Ct. 140, 102 L.Ed.2d 112 (1988). In *Gardinier* the court held that if the nature and purpose of a listing agreement and contract of sale are different, the consideration for each is separate and distinct, and the obligations of the parties to the respective agreements are not interrelated, then they are separate contracts even if they are set forth in one instrument. *Id.* For the reasons stated in *Gardinier* at page 976, I find that the contract of sale and listing agreement in this case are separate contracts. The reference in the contract of sale to the obligation to pay Weichert merely notes the debtor's obligation to pay Weichert, rather than creating it. The obligation to pay the commission in the event of sale to a buyer produced by Weichert was created by the listing agreement, which was executed by Weichert and the debtor three months prior to, and independently of, the debtor's contract with the Kanetkars.

Most courts that have examined this issue have held that a contract of sale and a listing agreement are separate contracts. *In re Gardinier, supra; In re Jones*, 98 B.R. 399 (Bkrtcy.C.D.Ill.1988); *In re Channel 2 Assoc.*, 88 B.R. 351 (Bkrtcy.D.N.M. 1988); *In re Moskovic*, 77 B.R. 421 (Bkrtcy. S.D.N.Y.1987); *Van Wagner v. Enz*, 75 N.J.Super. 251, 183 A.2d 101 (App.Div.), *cert. denied* 38 N.J. 497, 185 A.2d 869 (1962). The case of *In re Bernstein*, 62 B.R. 545, 547 (Bkrtcy.D.Vt.1986) appears to hold to the contrary, without much analysis. To the extent that *Bernstein* so holds, this Court declines to follow it, and chooses to follow the *Gardinier* line of cases. Not only is *Gardinier* correct in concluding that the parties usually intend a listing agreement and a contract of sale to be separate contracts, it also reaches a result which avoids a conflict in the case of listing agreements between Code §§ 327 and 365. The court in *Channel 2 Associates* held that "§ 365 cannot be used to circumvent the requirements of § 327. Even if the contract were executory, the debtor seeks to pay a professional person. Compensation for professionals is governed by § 330, which requires § 327 Court approval." *Id.* at 352–53.

For the foregoing reasons, the Court finds that the contract of sale and listing agreement are separate contracts, and that the debtor can assume the contract of sale

---

3. Under the Countryman definition, the listing agreement in this case would not be an executory contract because Weichert's services were completed before the petition was filed. Under the definition suggested in *Norquist*, the listing agreement might be an executory contract, depending upon how one defines the debtor's obligation under the listing agreement after the contract of sale is signed. The issue of whether the listing agreement in this case is an executory contract does not have to be decided, since it does not affect the outcome.

without also assuming the listing agreement.[4]

## IV.

■ Weichert argues in the alternative that it has an equitable lien on the premises which must be satisfied at closing on the contract of sale with the Kanetkars. A broker has no statutory lien in New Jersey for his commission. He does, however, have an equitable lien. *Cohen v. Estate of Sheridan*, 218 N.J.Super. 565, 528 A.2d 101 (Ch.Div.1987).

Unfortunately, the court in *Cohen v. Estate of Sheridan* expressly declined to determine the priority of the broker's equitable lien in relation to mortgage and judgment liens on the property, because the parties did not request that relief. *Id.* at 570, 528 A.2d at 104. No other reported decision has decided the issue of such priorities in New Jersey. It is the ultimate issue here, because under Code § 544(a), the trustee or debtor in possession has the status as of the petition date of a hypothetical levying judgment creditor and a bona fide purchaser of real property, and can avoid liens to the extent such levying judgment creditor or bona fide purchaser could do so. Thus, if such a hypothetical creditor or purchaser could avoid Weichert's equitable lien as of the petition date, then the debtor can do so.

■ It has been held under Bankruptcy Act § 70(c), the predecessor to Code § 544(a), that a contract purchaser's equitable lien on real property is void as against a bankruptcy trustee where such purchaser failed to record the contract of sale as authorized by N.J.S.A. § 46:16–1. *In re Pearl*, 40 B.R. 860 (Bkrtcy.D.N.J. 1984); *In re Penn Cent. Transp. Co.*, 385 F.Supp. 612 (E.D.Pa.1974); *In re Sayre Village Manor*, 120 F.Supp. 215 (D.N.J. 1954). However, equitable interests not created by a recordable instrument are valid as against subsequent judgment creditors without notice. 29 *New Jersey Practice*, R. Cunningham & S. Tischler, *Law of Mortgages* § 104 at 402 (1975); *Pearl, su-*

*pra* at 864–65. Under N.J.S.A. § 46:22–1, such interests would also be valid as against subsequent bona fide purchasers. Equitable liens which are valid under applicable nonbankruptcy law are upheld in bankruptcy unless they are avoidable under one of the trustee's avoiding powers. *Lewis v. Diethorn*, 893 F.2d 648, 650–51 (3rd Cir.1990). However, an equitable lien will not be upheld where all available means of perfecting a legal lien were not employed. *In re Sullivan*, 82 B.R. 133, 135 (Bkrtcy.D.Colo.1988); *In re O.P.M. Leasing Serv., Inc.*, 23 B.R. 104, 119 (Bkrtcy.S.D.N.Y.1982). The question then boils down to whether Weichert's equitable lien was created by a recordable instrument. If so, then the lien can be avoided by the debtor because no such instrument was recorded. If not, then the lien cannot be avoided by the debtor and must be satisfied if the property is sold to the Kanetkars.

### A.

A contract of sale is a recordable instrument under N.J.S.A. § 46:16–1. However, listing agreements are not mentioned in N.J.S.A. § 46:16–1, and the recordability of such agreements is therefore a matter of statutory construction. The next question then is whether the contract of sale or listing agreement creates the broker's equitable lien.

■ It is generally the intention of the parties when a broker is retained that he will be paid from the proceeds of sale. This is the basis for the holding of *Ellsworth Dobbs, Inc. v. Johnson, supra,* that when a broker is engaged by an owner of property to find a purchaser for it, the broker earns his commission when he produces a purchaser who enters into a binding contract of sale with the owner and title closes in accordance with the contract. *Id.* at 551, 236 A.2d at 855. "The whole doctrine of equitable liens or mortgages is founded upon that cardinal maxim of equity which regards as done that which has

---

**4.** The docket does not reflect the filing of any motion yet to assume the contract of sale, which of course will have to be done for assumption to be authorized.

been agreed to be, and ought to have been, done." *Rutherford Nat'l Bank v. H.R. Bogle & Co.*, 114 N.J.Eq. 571, 573–74, 169 A. 180, 182 (Ch.1933). Since the right to a commission arises from the agreement between the owner and the broker, it is the listing agreement which creates the equitable lien. The lien is inchoate until the contingencies in *Ellsworth Dobbs, Inc. v. Johnson* have occurred, and it ripens at closing into a choate lien on the fund due to the seller. *Cohen v. Estate of Sheridan, supra* at 570, 528 A.2d at 104.

### B.

 Since it is the listing agreement rather than the contract of sale which creates the broker's equitable lien, the next question is whether a listing agreement is a recordable instrument under N.J.S.A. § 46:16–1. That statute provides that "[a]ll deeds or instruments of the nature or description hereinafter in this section enumerated, of or affecting the title to real estate in this State may be acknowledged or proved and then recorded...."

As previously noted, listing agreements are not mentioned in the statute. The types of instruments which are mentioned can be summarized as follows: deeds, trust instruments, powers of attorney, contracts of sale, leases and other instruments by which an interest in real property is conveyed, or which create authority to convey such interest; mortgages; releases, postponements or subordinations of liens or other interests; assignments and discharges of mortgages; and all other instruments which any statute directs to be recorded. All of the enumerated instruments have in common the conveyance or release of an interest in or lien on real estate. By contrast, a listing agreement is an expression of an intention to find a purchaser of the property. It conveys no interest except the broker's inchoate equitable lien, which only vests upon closing between seller and purchaser. The broker's inchoate equitable lien does not rise to the level of the legal interests and liens which are enumerated in N.J.S.A. § 46:16–1. A listing agreement is therefore not one of the "instruments of the nature or description" set forth in, and is not recordable under, N.J.S.A. § 46:16–1.

### C.

The debtor argues that if a listing agreement is not recordable under N.J.S.A. § 46:16–1, it is recordable under N.J.S.A. § 46:16–2, which authorizes recordation of "[a]ll instruments of every kind in anywise affecting the title to any real estate situate in this state, or any interest therein, or containing any agreement in relation thereto...." It is unclear what is recordable under N.J.S.A. § 46:16–2 that is not also recordable under § 46:16–1. The language of § 46:16–2 is more sweeping and admittedly might be construed to authorize recordation of listing agreements. However, under N.J.S.A. § 46:22–1, only instruments recordable under § 46:16–1 must be recorded to defeat subsequent judgment creditors and bona fide purchasers without notice. The question of whether a listing agreement is recordable under N.J.S.A. § 46:16–2 is therefore irrelevant.

### D.

The holding that a listing agreement is not recordable under N.J.S.A. § 46:16–1 is also consistent with prevailing commercial practice. I have never seen, and have not been referred to, any instance in which a listing agreement was recorded. I suspect it would come as a surprise or shock to those involved in the real estate market to hear that brokers can and should record listing agreements to protect their commissions. Further, there may be good reasons why listing agreements should not be recorded even if they could be. For example, there might be instances where a listing agreement of record could give a broker undue leverage in a dispute as to whether a commission is due on a particular sale. It also might restrict an owner's ability to change brokers. It therefore does not strike me as in the public interest to hold that brokers can and should record listing agreements.

 On the other hand, to the extent that a balancing of public policy concerns is any part of the decision here, it might be

countered that one of the fundamental principles of bankruptcy law is that similarly situated creditors should be treated alike. While that is true, a creditor holding a lien is not situated similarly to those who have none. Further, the bankruptcy court is a court of equity, and absent overriding considerations not present in this case, this Court holds that where a listing agreement and contract of sale are signed before a bankruptcy petition is filed, the broker's inchoate equitable lien under *Cohen v. Estate of Sheridan* is valid as against a bankruptcy trustee and ripens into a choate lien upon the fund created at closing.[5]

### V.

To summarize, the Court holds the following:

1. When a broker produces a purchaser who signs a contract with an owner to purchase property, the broker's obligation to the owner under their agreement has been fulfilled. Since the contract between the debtor and the Kanetkars was signed before the bankruptcy petition was filed, Weichert is not obligated to render any postpetition services which would necessitate its retention by the debtor in possession.

2. An application to retain a professional must be made by or on behalf of the debtor in possession, trustee or creditors committee. If such an application is made on behalf of such fiduciary, it must be made with the fiduciary's consent.

3. A listing agreement and a contract of sale are generally separate contracts, and they are separate in this case. A debtor can therefore assume a contract of sale without also assuming a prior listing agreement.

4. Where a listing agreement and contract of sale have been signed before a bankruptcy petition is filed, the listing broker has an inchoate equitable lien upon the

subject property which is valid as against a bankruptcy trustee and which ripens into a choate lien upon the fund created at closing. Weichert has such a lien in this case.

The attorney for Weichert shall submit an order consistent with this opinion under the five-day rule.

---

5. If no contract of sale has been signed when the bankruptcy petition is filed, the analysis must be modified. In such situations, the requirements of Code § 327(a) and Rule 2014(a) regarding retention of professionals must be met before a broker can be compensated under

Code § 330(a). By contrast, no such requirement exists where the contract has been signed prepetition, because as previously noted, the broker is not then required to render any further services to earn his commission upon closing.